# IN THE UNITED STATES DISTRICT COURT
# DISTRICT OF PUERTO RICO

| | |
|---|---|
| WAL-MART PUERTO RICO, INC., | CIVIL No. 15-3018 (JAF) |
| Plaintiff, | |
| v. | |
| JUAN C. ZARAGOZA-GÓMEZ, in his official capacity as Secretary of the Treasury of the Commonwealth of Puerto Rico, | |
| Defendant | |

## MOTION TO DISMISS FOR WANT OF JURISDICTION
## UNDER Fed. R. Civ. P. 12(b)(1)

**TO THE HONORABLE COURT**:

**APPEARS** "Defendant" the Secretary of the Treasury of the Commonwealth of Puerto Rico, in his official capacity,[1] without submitting to the jurisdiction of this Honorable Court, through the undersigned counsel, and respectfully submits this Motion to Dismiss, based on the complaint's failure to overcome the jurisdictional hurdle of the Butler Act. The present case is a glaring instance of absence of federal jurisdiction at the district court level pursuant to express Congressional statutory language. The jurisdiction of the federal judiciary to intervene in this matter is limited to

---

[1] Since his appointment to his current Cabinet Post, Secretary Juan C. Zaragoza-Gómez ("Zaragoza") publicly manifested that he would recuse himself from intervening in any matter related to his former clients. While in his private practice as Certified Public Accountant, Mr. Zaragoza performed services for Plaintiff Wal-Mart. All matters in which Zaragoza does not intervene are managed by the appearing party, Undersecretary Juan A. Flores-Galarza (a former Secretary of the Treasury himself) who as Undersecretary of the Treasury Department and pursuant to Commonwealth law, automatically substitutes the Secretary when the latter does not intervene in certain matter. This action, hence, should considered as an official capacity action against the Undersecretary. As long as Plaintiff's claims under 42 U.S.C. § 1983 are for prospective relief, Mr. Flores-Galarza is a "person" under Section 1983. For all other purposes, Section 1983 is not the proper vehicle for relief, insofar as Puerto Rico, as well as his officials acting in their official capacities sued for purposes other than prospective injunctive or declaratory relief, are not "persons" under Section 1983. *See* Will v. Michigan Dept. of State Police, 491 U.S. 58, 71 n.10 (1989). That said, this Court would have no authority to even issue declaratory or prospective injunctive relief in the present case. *See*, *e.g*., Fair Assessment in Real Estate Ass'n v. McNary, 454 U.S. 100, 103 91981)("federal courts ... may not even render declaratory judgments as to the constitutionality of state tax laws."); Levin v. Commerce Energy, *infra*.

the United States Supreme Court, but only after the Puerto Rico highest court decides Plaintiff's challenge to the tax in question and federal questions are still left for adjudication. Given the Butler Act, its construction *in pari materia* with the Tax Injunction Act and the federal comity doctrine applicable to challenges to state taxes (which also informs the construction and reach of both Acts), this Court must, as its first and foremost duty, face and decide the threshold matter of its jurisdiction; and rely on Federal Rule of Civil Procedure 12(b)(1) and the substance of the Butler Act and/or the comity doctrine to dismiss Wal-Mart Puerto Rico's complaint.

In support of the foregoing, Defendant further states, expounds and prays as follows:

## I.  INTRODUCTION

1.1     On December 4, 2015, Wal-Mart Puerto Rico, Inc. ("Wal-Mart"or "Plaintiff") filed the instant action, naming as sole defendant the Puerto Rico Secretary of the Treasury, in his official capacity. Wal-Mart challenges the legality of a recent increase in a tax, claiming that said increase is illegal under the United States Constitution, specifically its Commerce Clause, Equal Protection Clause, and Bill of Attainder Clause; as well as under the pertinent passage of Section 3 of the Federal Relations Act of 1950.

1.2     The Complaint states that, "in response to the Commonwealth's current financial crisis, the government of Puerto Rico has shortsightedly and illegally targeted Wal-Mart PR with an extraordinarily onerous and unconstitutional 'income' tax. This is not a tax on income at all, but rather a tax on Wal-Mart PR's purchases of goods from Wal-Mart distribution centers located in the mainland United States." *ECF No. 1*, ¶ 1 at 1-2.

1.3     Specifically, the Complaint targets a recent increase in the Tangible Property Component of the Alternative Minimum Tax ("AMT"), which it describes as "the component that

taxes the value or property transferred to an entity doing business in Puerto Rico from a related party outside of Puerto Rico," which was allegedly increased by Act No. 72 of May 29, 2015, "from 2% to 6.5% for entities that have gross revenues of more than $2.75 billion from a trade or business in the Commonwealth." *ECF No. 1*, ¶ 2 at 2.  It adds: "There is an important exception to this tax, in favor of local business: Property transferred from a related party located in Puerto Rico is exempt from the [tax]." *Id*. The pleading avers that "[a]s was widely reported in Puerto Rico at the time of passage of Act 72, the new tax specifically targeted 'megastores' with mainland-related activities –meaning Wal-Mart PR, and very few others." *ECF No. 1*, ¶ 4 at 2.

1.4    Wal-Mart requests that this Court provide the following remedies: (i) a declaratory judgment stating that the AMT is unconstitutional and contrary to the Federal Relations Act;[2] (ii) an injunction against the enforcement of the AMT; (iii) an award of attorney's fees and court costs. *ECF No. 1*, at 35-36.

1.5    Those claims and remedies, however, are not to be originally made and sought in the federal jurisdiction, but in state courts, in this case in the courts of the Commonwealth of Puerto Rico. The Butler Act and the comity considerations underlying it require dismissal. Hence the present Motion to Dismiss for want of federal jurisdiction.

---

[2]    The second paragraph of Section 3 of the Puerto Rico Federal Relations Act of 1950 provides: "The internal-revenue taxes levied by the Legislature of Puerto Rico in pursuance of the authority granted by this chapter on articles, goods, wares, or merchandise may be levied and collected as such legislature may direct, on the articles subject to said tax, as soon as the same are manufactured, sold, used, or brought into the island: Provided, That no discrimination be made between the articles imported from the United States or foreign countries and similar articles produced or manufactured in Puerto Rico. The officials of the Customs and Postal Services of the United States are directed to assist the appropriate officials of the Puerto Rican government in the collection of these taxes."  48 U.S.C. § 741a. Wal-Mart wrongly avers that Puerto Rico's AMT violates that provision, because it "expressly distinguishes between a transfer from a related entity that is doing business in Puerto Rico (such a transfer is not taxed; it is exempt from the Tangible Property Component), and a transfer from a related entity that is located outside Puerto Rico (this transfer is taxed)." *ECF No. 1*, ¶ 5 at 3.

1.6     Wal-Mart's complaint reads more as a brief than an initial pleading. Given the Butler Act's jurisdictional rampart, of which Wal-Mart is acutely aware, the complaint even reads like a brief in compliance with an order to show cause why the Court should not dismiss for absence of federal jurisdiction. However, as Defendant explains hereinafter, Wal-Mart utterly fails to show that the clear dictates of the pertinent statutes and doctrines do not defeat its pretension for a federal adjudication in first instance of its action.

1.7     That first shot at adjudication lies explicitly in the Puerto Rico courts. The averments of the complaint and the relief requested therein underscore the inevitability of that conclusion. As Defendant elaborates hereinafter, this Court must entertain the threshold matter of its jurisdiction before doing engaging in any task related to solving the merits of the action; and dismiss Wal-Mart's action for want of first instance, subject-matter federal jurisdiction.

1.8     On December 14, 2015, this Court issued an Order shortening the 21-day period within which Defendant must answer or otherwise plead (due on Monday, December 28, 2015, as Friday, December 25 is a holiday). The Court instructed Defendant "to file his answer to the Complaint on an expedited basis on or before December 21, 2015." (*ECF No. 16*). The Court also convened counsel for the parties to a conference to be held on December 23, 2015; and specified that the parties "should expect a short schedule for discovery and other issues, as well as a disposition hearing early in January 2016." *Id*.

1.9     The filing of this motion pursuant to FED. R. CIV. P. Rule 12(b)(1) is a pleading in compliance with the aforementioned order shortening the time allotted by Rule 12 to answer the complaint or otherwise plead. Defendant respectfully submits that the jurisdictional challenge is a threshold matter that should be decided  before allowing the case to progress. Accordingly,

Defendant is also submitting today a Motion requesting that the Court decide this jurisdictional challenge before the scheduling of pretrial and trial proceedings. *See* the present motion, *infra*, ¶ 2.6 at 6, citing the preeminent federal practice treatise.

1.10    Since it is procedurally expedient to decide first the jurisdictional issue, Defendant respectfully submits that, in accordance with the civil practice established by FED. R. CIV. P. 12, the Answer to the Complaint is to be postponed as provided by paragraph (a)(4) of the same. *See* STEVEN BAICKER-MCKEE, WILLIAM M. JANSSEN & JOHN B. CORR, FEDERAL CIVIL RULES HANDBOOK 418-419 (2013), discussing the principle that the filing of Rule 12(b) motions ordinarily has a tolling effect pursuant to FED. R. CIV. P. 12(a)(4), suspending the party's time for serving a responsive pleading. That "tolling will usually continue to run until the court has ruled on the pending motion." *Id.*, at 419 (case citations omitted).

## II.    ARGUMENT

### A.    THE DISMISSAL STANDARD AND THE DUTY TO IMMEDIATELY AND FIRSTLY DECIDE THE THRESHOLD MATTER OF JURISDICTION

2.1    As the eminent treatise on federal practice succinctly puts it, Federal Rule of Civil Procedure 12(b) "encourages a defending party to attempt to bring an early end to the lawsuit and thereby avoid being forced to prepare for a trial on the merits when the case should be dismissed because of a **threshold** or technical matter." 5B CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE: CIVIL 3D § 1349 at 57 (2004)(emphasis added). In the present motion, Defendant is precisely calling attention to a threshold matter concerning the crucial issue of whether there is lack of jurisdiction, thus demanding the attention of the parties and of the court before any other task.

2.2     Federal Rule of Civil Procedure 12(b)(1) is the procedural vehicle to challenge "the factual merits of the asserted federal jurisdiction. In such a challenge, the pleading itself may have adequately alleged the presence of federal subject matter jurisdiction, but the actual facts and allegations before the court may belie that averment, confirming that federal jurisdiction is absent and, thus, compelling the case's dismissal." STEVEN BAICKER-MCKEE, WILLIAM M. JANSSEN & JOHN B. CORR, FEDERAL CIVIL RULES HANDBOOK 426 (2013). Hence, Rule 12(b)(1) "raises the fundamental question whether the federal district court has subject matter jurisdiction over the actions before it." WRIGHT & MILLER, *supra* at 61. That Rule goes to "whether the plaintiff has a right to be in the particular court." WRIGHT & MILLER, *supra* at 106.

2.3     Defendant submits that such is precisely the situation here: the facts alleged in Wal-Mart's action, *in tandem* with the remedies it  requests, show that this Court lacks jurisdiction. Plaintiff has no right to an initial adjudication of its claims in this particular court. The Butler Act requires this Court to dismiss the complaint for want of federal subject matter jurisdiction.

2.4     As the Supreme Court has made clear, "[t]he objection that a federal court lacks subject-matter jurisdiction, see Fed. Rule Civ. Proc. 12(b)(1), may be raised by a party, or by a court on its own initiative, at any stage in the litigation, even after trial and the entry of judgment. Rule 12(h)(3) instructs: 'Whenever it appears by suggestion of the parties or otherwise that the court lacks jurisdiction of the subject matter, the court shall dismiss the action.'" Arbaugh v. YH Corp., 546 U.S. 500, 506 (2004).

2.5     That is why a federal court's "first duty" in every case is verifying its subject matter jurisdiction. McCready v. White, 417 F.3d 700, 702 (7th Cir. 2005)("Ensuring the existence of federal subject-matter jurisdiction is the court's first duty in every lawsuit."). *See also* Bonas v.

Town of North Smithfield, 265 F.3d 69, 73 (1ˢᵗ Cir. 2001)("Federal courts are courts of limited jurisdiction, and therefore must be certain that they have explicit authority to decide a case.").

2.6     That also explains why, "[i]f the defense of lack of subject matter jurisdiction is advanced by a motion under Rule 12(b)(1), it must be made prior to service of the responsive pleading," WRIGHT & MILLER, *supra* at 138; and why "when the motion is based on more than one ground, the cases are legion stating that the district court would consider the Rule 12(b)(1) challenge first because if it must dismiss the complaint for lack of subject matter jurisdiction, the accompanying defenses are objections become moot and do not need to be determined by the judge." WRIGHT & MILLER at 138-139. *See*, *e.g.*, Deniz v. Municipality of Guaynabo, 285 F.3d 142, 149 (1ˢᵗ Cir. 2002)(Selya, J.)("When a court is confronted with motions to dismiss under both Rules 12(b)(1) and 12(b)(6), it ordinarily ought to decide the former before broaching the latter.").

2.7     Once the existence of federal jurisdiction is questioned by the defendant or *sua sponte* the Court, the burden of proof is on the plaintiff to establish it. WRIGHT & MILLER, *supra* at 211; Thomas v. Gaskill, 315 U.S. 442 (1942); Iglesias v. Mutual Life Ins. Co. of New York, 156 F.3d 237 (1ˢᵗ Cir. 1998). Because whether there is jurisdiction is the quintessential threshold matter before a court of limited jurisdiction, the Court and the parties in the instant case must first attend to that critical, potentially dispositive matter. Particularly because the present is a run-of-the-mill Butler Act case, in which the extreme likelihood of absence of jurisdiction is the first notion that comes to mind after reading Wal-Mart's complaint, way before hitting the books. For the same reason, "[i]f the Court determines that subject matter jurisdiction does not exist it must dismiss the case and not make any determination on the merits." Fernandez Molinary v. Industrias La Famosa, Inc., 203 F.Supp. 2d 111, 114 (D.P.R. 2001)(Domínguez, J.).

**B.** **THE COMPLAINT FAILS TO OVERCOME THE JURISDICTIONAL HURDLE OF THE BUTLER ACT.**

**1.** **The Basic Framework**

2.8 The Tax Injunction Act ("TIA") provides that the "District Court shall not enjoin, suspend or restrain the assessment, levy or collection of any tax under State law where a plain, speedy and efficient remedy may be had in the courts of such State." 28 U.S.C. § 1341. Meanwhile, the Butler Act provides that "no suit for the purpose of restraining the assessment or collection of any tax imposed by the laws of Puerto Rico shall be maintained in the United States District Court for the District of Puerto Rico." 48 U.S.C. § 872. The Court of Appeals for the First Circuit has held that the Butler Act ("BA") is a close analogue to the Tax Injunction Act ("TIA"). Thus, courts apply the BA "in the same manner as the TIA." Pleasures of San Patricio v. Méndez-Torres, 596 F.3d 1, 5 (1st Cir. 2010).

2.9 The TIA "has been interpreted as creating a jurisdictional bar to federal courts interfering with the collection of state or local taxes." ERWIN CHEMERINSKY, FEDERAL JURISDICTION 734-733 (4th ed. 2003). Since "the Act is viewed as a limit on the subject matter jurisdiction of the federal courts, jurisdiction may not be obtained by the consent of the state or local governments." FEDERAL JURISDICTION at 733 (citing Burris v. City of Little Rock, 941 F.2d 717 (8th Cir. 1991); Hardwick v. Cuomo, 891 F.2d 1097 (3rd Cir. 1989); City of Burbank v. State of Nevada, 658 F.2d 708, 709 (9th Cir. 1981)).

2.10 The TIA "embodies considerations of federalism: deference to state and local governments in the collection of revenues." FEDERAL JURISDICTION at 734. *See*, *e.g.*, Tully v. Griffin, 429 U.S. 68, 73 (1976)(The TIA "has its roots in equity practice, in principles of federalism, and in recognition of the imperative need of a State to administer its own fiscal operations."); Moe v.

Confederated Salish & Kootenai Tribes, 425 U.S. 463, 470 (1976)(Because interference with a State's internal economy is inseparable from a federal action to restrain state taxation, the mere illegality or unconstitutionality of a state tax is not in itself a ground for equitable relief in the courts of the United States); Hillsborough v. Cromwell, 326 U.S. 620, 622 (1946) (Suits in equity are not to be entertained in federal court in cases where there is a remedy at law which is plain, adequate and complete, principle that has peculiar force in cases where the federal courts are asked to enjoin the collection of a state tax).

> **2**.    **The Relief Sought by Wal-Mart's Action Precisely Requires Dismissal of Its Lawsuit on Jurisdictional Grounds.**

2.11    Professor Chemerinsky explains that courts "have broadly interpreted the [TIA] as preventing federal courts from interfering with virtually all forms of state and local taxes. Thus, the Act prohibits injunctions of gross receipts, income, property, sales, license, and special assessment taxes." FEDERAL JURISDICTION at 734-735 (case citations omitted).

2.12    In Hibbs v. Winn, 542 U.S. 88 (2004), the Supreme Court made it clear that the TIA applies to actions which, like Wal-Mart's in the instant litigation, interfere with the collection of revenue. Hence, seeking "federal-court relief from a [state tax] ... was exactly what the TIA was designed to ward off." Hibbs, 542 U.S. at 106. *See also* California v. Grace Brethren Church, 457 U.S. 393, 410 (1982)(stating that if federal declaratory relief were available to test state tax assessments, "state tax administration might be thrown in disarray, and tax-payers might escape the ordinary procedural requirements imposed by state law. During the pendency of the federal suit collection of revenue under the challenged law might be obstructed, with consequent damage to the State's budget, and perhaps a shift to the State of the risk of tax-payer insolvency.").

9

2.13    To determine whether a case "falls within the TIA's [and BA's] prohibition, it is appropriate, first, to identify the relief sought." Hibbs, 542 U.S. at 99. As mentioned, in its Complaint Wal-Mart requests a "declaratory judgment stating that the AMT is unconstitutional and contrary to the Federal Relations Act;" and an "injunction against the enforcement of the AMT." *ECF No. 1*, at 35-36. Moreover, the Complaint makes it clear elsewhere that what Wal-Mart is seeking is to avoid paying the tax in question; or eventually receive a refund. That is exactly the type of remedy which activates the TIA and/or the BA, barring in turn a first instance federal adjudication.

2.14    As this District Court itself has expounded, in these circumstances federal jurisdiction is wanting, as "federal courts have adopted a hands off approach with respect to state tax administration. Such axiom is inspired on a notion of comity and federalism that exists between federal and state governments." Iberia Líneas Aéreas de España v. Vélez-Silva, 59 F.Supp. 2d 266, 272 (D.P.R. 1999)(citing and quoting National Private Truck Council v. Okla. Tax Com'n, 515 U.S. 582, 586 (1995). Moreover, both "the Tax Injunction Act (28 U.S.C. § 1341) and the Butler Act (48 U.S.C. § 872) recognize this doctrine." Iberia Líneas Aéreas, 59 F.Supp. 2d at 272. Hence, the Butler Act "forbids federal courts from entertaining actions designed to enjoin collection of state taxes either by injunctive or declaratory means." *Id*.

2.15    In Coors Brewing v. Méndez-Torres, 562 F.3d 3 (1st Cir. 2009), the Court of Appeals for the First Circuit held that the BA only applies to bar federal jurisdiction in cases where the plaintiff seeks to challenge taxes in a way that would reduce the flow of state tax revenue. The Court, however, found that the district court had jurisdiction to entertain the suit, because the plaintiff did not "seek to lower the tax rate on itself," but rather requested a remedy which, if granted, its tax liability would "be unchanged." 562 F.3d at 14. Since "the Butler Act is read in parallel to the TIA,

and since it similarly only restricts the district courts remain from entertaining suits 'for the purpose of restraining the assessment or collection' of taxes of Puerto Rico, we read it, according to Hibbs, to only apply where plaintiffs seek to challenge taxes in a way that would reduce the flow of tax revenue." *Id*.

2.16    Since in Coors Brewing plaintiff requested an injunction requiring all brewers, large and small, to pay the higher, large-brewer tax, thereby increasing the revenue flowing to Puerto Rico, the Court held that the BA did not bar federal jurisdiction. In contrast, in Pleasures of San Patricio, *supra*, plaintiff was seeking a declaratory judgment stating that it did not have to pay the challenged tax, as it did not request an injunction requiring the Commonwealth to apply the tax to all businesses in its category. Thus, its suit fell "within the ambit of suits barred by the Butler Act." 596 F.3d at 7.

2.17    Under Coors Brewing, Wal-Mart's lawsuit does not belong in federal court, because it seeks precisely to be relieved altogether from the payment of a Puerto Rico tax. Moreover, because Coors Brewing was abrogated by the Supreme Court with its decision in Levin v. Commerce Energy, 560 U.S. 413; 130 S.Ct. 2323 (2010), a distinction concerning the goal of the challenging taxpayer is irrelevant for purposes both of the TIA and of the comity doctrine. Thus, the action of the brewery had to be dismissed on jurisdictional grounds, as indeed it was on remand.

2.18    In Levin, the Court confronted the question "whether a federal district court may entertain a complaint of allegedly discriminatory state taxation, framed as a request to increase a commercial competitor's tax burden." 560 U.S. at 417; 130 S.Ct., at 2328. The Court answered that question against the exercise of federal jurisdiction, holding that, under the comity doctrine, a taxpayer's complaint of allegedly discriminatory state taxation, even when framed as a request to increase a competitor's tax burden, must proceed originally in state court.

11

2.19    The Court stated at the outset that the TIA was relevant to its analysis. *Id*. Then it summed up the nature of the other relevant source, the comity doctrine: "More embracive than the TIA, the comity doctrine applicable in state taxation cases restrains federal courts from entertaining claims for relief that risk disrupting state tax administration." *Id*. Like Wal-Mart's action in the present case, <u>Levin</u> was about alleged unequal tax treatment between competitors, which favored in-state business. In deciding against the exercise of jurisdiction, the Court reiterated that "[c]omity's constraint has particular force when lower federal courts are asked to pass on the constitutionality of state taxation of commercial activity." 560 U.S. at 421; 130 S.Ct., at 2330.

2.20    Significantly, the Court expounded why only Supreme Court review of a state judiciary final adjudication is appropriate in these type of cases: "[T]his Court, upon finding impermissible discrimination in a State's [tax measure], generally remands the case, leaving the remedial choice in the hands of state authorities." 560 U.S. at 427; 130 S.Ct. at 2333-2334. That is so, because "when this Court –on review of a state high court's decision– finds a tax measure constitutionally infirm, [it has] for reasons of 'federal-state comity,' '[abstained] from deciding the remedial effects of such a holding.'" 560 U.S. at 427; 130 S.Ct. at 2334. That is,"[o]ur remand leaves the interim solution in state-court hands, subject to subsequent definitive disposition by the State's legislature." 560 U.S. at 428; 130 S.Ct. at 2334. On the other hand, if " lower federal courts were to give audience to the merits of suits alleging uneven state tax burdens, ... recourse to state court for the interim remedial determination would be unavailable. That is so because federal courts lack authority to remand to the state court system an action initiated in federal court." *Id*. Added the Court:

> Federal judges, moreover, are bound by the TIA; absent certain exceptions, *see*., *e.g*., <u>Department of Employment</u> v. <u>United States</u>, 385 U.S. 355, 357-358 (1966), the Act

precludes relief that would diminish state revenues, even if such relief is the remedy least disruptive of the state legislature's design. These limitations on the remedial competence of lower federal courts counsel that they refrain from taking up cases of this genre, so long as state courts are equipped fairly to adjudicate them.

*Id*.

2.21    "In short," geographically paraphrasing Levin, "if the [Puerto Rico] scheme is indeed unconstitutional, surely the [Puerto Rico] courts are better positioned to determine –unless and until the [Puerto Rico] legislature weighs in– how to comply with the mandate of equal treatment." 560 U.S. at 429; 130 S.Ct. at 2335. Like in Levin, here Wal-Mart seeks "federal-court review of commercial matters over which [Puerto Rico] enjoys wide regulatory latitude; [its] suit does not involve any fundamental right or classification that attracts heightened judicial scrutiny. ... [Wal-Mart is] in fact seeking federal-court aid in an endeavor to improve [its] competitive position [as evidenced by the Complaint's not-at-all- veiled threat to leave the Island altogether]. … [The Puerto Rico] courts are better positioned than their federal counterparts to correct any violation because they are more familiar with state legislative references and because the TIA does not constrain their remedial options. ... [I]n combination, [these considerations] demand deference to the state adjudicative process." 560 U.S. at 431-432; 130 S.Ct. at 2336.

2.22    It is irrelevant whether this Court relies on the Butler Act or on the comity doctrine (although the BA, Defendant submits, is squarely applicable in the present case). Both are "threshold grounds for dismissal," 560 U.S. at 432; 130 S.Ct. at 2337; and federal courts have "flexibility to choose among threshold grounds for dismissal." *Id*.

### 3. Wal-Mart Can Neither Establish that Puerto Rico Does Not Provide a Plain, Speedy and Efficient Remedy, Nor Can it Rely on Any Other Alleged Exception.

2.23    In its attempt to overcome the massive jurisdictional hurdle posed by the Butler Act, Wal-Mart alleges that adjudicating its claims "by seeking a refund through the Commonwealth's administrative and judicial processes would be slow –likely more than six years– impractical, and inefficient." *ECF No. 1*, ¶ 6 at 3. It adds, *inter alia*, that given "Puerto Rico's acute financial troubles, including its acknowledged difficulty in paying far smaller tax refunds, depriving Wal-Mart PR of the ability to challenge the [tax] in this Court will greatly increase the likelihood that Wal-Mart PR will never recover the enormous tax refunds to which it will be entitled. Federal jurisdiction exists where, as here, the taxpayer is unable to obtain an effective remedy through the Commonwealth courts." *Id*.

2.24    The complaint adds that "Wal-Mart PR cannot sustain its operations for a lengthy period of time with a 91.5% tax burden, and with no certainty that the Government would even be financially capable of refunding the taxes when Wal-Mart PR prevails at the end of the process. Wal-Mart PR would have to review and reconsider its operations if it must pay the confiscatory 91.5% tax for years before it can seek vindication of its federal rights in a federal court." *Id*.

2.25    That is, plaintiff first affirms that if it has to suffer the described "tax burden" it could not sustain its operations; and in the next sentence it states that it "would have to review and reconsider its operations if it must pay the confiscatory 91.5% tax for years." However, one thing is to be unable to continue operating, and another to prefer not to in order to avoid paying whatever amount in taxes.

2.26    Wal-Mart also pretends to conflate the alleged long period of time (six years) it would take to adjudicate its claims in the Puerto Rico jurisdiction with the state of the Commonwealth's

finances. *See **ECF No. 1***, ¶ 6 at 3; ¶ 7 at 3-4. The complaint, however, fails to show even a minimal indication of establishing the jurisdiction of this Court.

2.27    The requirement of a "plain, speedy and efficient remedy in state courts" is "only a procedural one." Pleasures of San Patricio, *supra*, 596 F.3d at 7. The same is met, so long as the state provides a taxpayer with a full hearing and judicial determination at which she may raise all constitutional objections to the tax "and may therefore seek review before the Supreme Court." ***Id***.

2.28    Given that meaning of a "plain, speedy and efficient remedy in state courts," it is not at all surprising that, at least as of 2008, "**no federal court has held** that a state's court system is incapable of supplying a constitutional plaintiff with a plain, speedy and efficient remedy." DAVID FAUTSCH, THE TAX INJUNCTION ACT AND FEDERAL JURISDICTION: REASONING FROM THE UNDERLYING GOALS OF FEDERALISM AND COMITY, 108 MICHIGAN L. REV. 795, 801 (March 2010)(relying on Ann K. Wooster, Annotation, *What Constitutes Plain, Speedy, and Efficient State Remedy Under Tax Injunction Act (28 U.S.C.A. § 1341), Prohibiting Federal District Courts from Intervening with Assessment, Levy, or Collection of State Business Taxes*, 31 A.L.R. FED. 2D 237, 253 (2008)(emphasis added).

2.29    The Court of Appeals noted that Puerto Rico law requires individuals who contest a tax to pay the same and then apply to the Secretary of the Treasury for a refund; and "state refund actions that allow protesting tax-payers the opportunity for state judicial review of their constitutional and federal claims generally constitute a plain, speedy, and efficient remedy." Pleasures of Puerto Rico, *supra*, 596 F.3d at 7. That is, normally, "Puerto Rico's requirement that [a plaintiff must absorb] the burden of the tax prior to contesting it does not deprive [plaintiff] of a plain, speedy, and efficient remedy in Puerto Rico courts." 596 F.3d at 9.

2.30    The Court also noted that other circuits deem that in certain circumstances a state refund procedure might not do, particularly when requiring the payment of an exorbitant or effectively punitive tax may present such a heavy burden that declining federal equitable relief would be to deny judicial review altogether. 596 F.3d at 9, n. 5.[3/] But, added the Court, plaintiff "has never contended it is unable to pay the 'six dollars and fifteen cents' excise ax allegedly imposed by Puerto Rico upon its shipment of little cigars. As a result, we have no reason to believe that special circumstances of the nature other circuits have discussed exist here to justify jurisdiction." *Id*.

2.31    Wal-Mart concedes that " in a garden-variety tax dispute" a six-year adjudication wait might be "a sufficiently 'plain, speedy, and efficient remedy.'" *ECF No. 1*, ¶ 51 at 22. But, it adds, "this particular case is exceptional because the sum at stake here is enormous even for one tax year; over six years, that sum will reach stratospheric levels. Even assuming –conservatively– that the refund process takes six years, Wal-Mart PR would have to pay approximately $155 million in unconstitutional taxes to continue operating during this time." *ECF No. 1*, ¶ 51 at 22-23.

2.32    Dividing $155 million dollars over a six-year period yields an average of almost 26 million dollars per year ($25.83). Plaintiff avers that it operates in Puerto Rico 55 stores; that it employs 15,000 people ("making it the largest private employer in the Commonwealth"); that it is "the single largest private sales tax collector in Puerto Rico, collecting approximately $100 million in sales tax annually;" that it purchases "more than $1.6 billion in products from Puerto Rican

---

[3]    Wal-Mart mistakenly states that the First Circuit has carved that exception. What the Court said in such footnote 5 is that "sister circuits" have articulated and applied that exception and that, if the Court also applied it, plaintiff had not contended that it could not pay the tax before seeking the refund. That begs the question whether Wal-Mart needs to plausibly allege that it could not pay the tax before seeking its refund. Wal-Mart does not allege that. On the contrary, it avers that "the income tax that Wal-Mart is currently paying (and, in the absence of federal equitable relief, must continue to pay) is 'exorbitant.'" Hence, by already paying the challenged tax, Wal-Mart has already shown that it is able to pay the same (at least for now), and is arguably barred from claiming otherwise.

suppliers;" that through its charitable activities in Puerto Rico, "Wal-Mart PR each year gives nearly $3 million to charities in Puerto Rico." ***ECF No. 1***, ¶¶ 13; 14; 15, at 5-6. Also, that it "paid approximately **$2.4 million** for the services it received from related entities located outside Puerto Rico." ***Id***., ¶ 18 at 6; and that in 2015, it paid "approximately $685 million for the goods shipped to it by [its] related entities." ***ECF No. 1***, ¶ 17, at 6.

2.33    In sum, given those averments and the allegation that it is currently paying the challenged tax, Wal-Mart is indeed alleging that it is and can indeed pay the tax. Thus, the so-called "heavy burden" exception mentioned in Pleasures of Puerto Rico, 596 F.3d at 9, n. 5 would be totally irrelevant here. The pleading itself defeats it. Moreover, given the decision in Levin, *supra*, the vitality or viability of such an exception is doubtful at best, particularly if a corporate mogul pretends to invoke it, while its complaint belies its relevance.

2.34    In any event, a "heavy burden" allegation goes to the merits of a challenge to the tax, not to the question of first instance jurisdiction. Wal-Mart would surely claim that such burden is one of the reasons why the tax should not be kept in place or that it should be modified. But that claim does not aid in its pretension that this Court must decide its action.

2.35    Wal-Mart alleges that adjudicating its claims "by seeking a refund through the Commonwealth's administrative and judicial processes would be slow –likely more than six years– impractical, and inefficient." ***ECF No. 1***, ¶ 6 at 3. Thus, it sustains, "swift federal adjudication of these straightforward claims is necessary." ***Id***.[4]

---

[4]  It is to be noted that in the Pleasures of San Patricio litigation, plaintiff filed an action in Commonwealth court right after the U.S. District Court dismissed the complaint on Butler Act grounds. By the time the case reached the First Circuit, plaintiff had obtained a partial summary judgment in its favor, which the Commonwealth had already appealed with the Puerto Rico appeals court. Hence, it is not clear why Wal-Mart alleges that and adjudication of its claims in Puerto Rico courts would take no less than six years. Wal-Mart does not allege facts in support of that conclusion.

(continued...)

2.36    Hence, Wal-Mart did not care to allege facts in support of its conclusion that an adjudication of its claims in the Puerto Rico court system would take six years. On the other hand, federal adjudication has recently taken virtually as long as that, in a case where this District Court had correctly dismissed for want of jurisdiction, based on several threshold grounds for dismissal that included the Butler Act and comity and abstention doctrines. Coors Brewing Co. v. Mendez-Torres, 787 F.Supp. 2d 149, 156 (D.P.R. 2011)(Domínguez, J., on remand) ("The history of the instant case is tumultuous, spanning five years and encompassing a reversal and remand by the First Circuit, and a subsequent abrogation by the Supreme Court of the United States.").

2.37    Moreover, here the administrative refund request is not necessary and Wal-Mart can go directly to the Puerto Rico Court of First Instance to present its claims. As this Court through this Presiding Judge correctly concluded in Shepard v. First Federal Savings Bank, 625 F.Supp. 1359, 1363-1364  (D.P.R. 1985)(Fusté, J.), an "**argument that under Puerto Rico law there is no remedy ... lacks merit**." (Emphasis added.) That is so, because Puerto Rico law "does not prohibit the Puerto Rico courts from exercising jurisdiction in cases where an injunction or restraining order is sought to prevent the levying or collection of taxes. Local law provides an exception under which the courts of Puerto Rico can issue injunctive relief to restrain the applicability of *any* Act under which it is alleged that the Commonwealth of Puerto Rico is depriving any person of any right, privilege or immunity which is 'protected by the Constitution or the Laws of the Commonwealth of Puerto Rico or under the Constitution or Laws of the United States of America.'" 625 F.Supp. At 1364 (italics by the Court).

---

[4]  (...continued)
Besides, if its claims are as " straightforward" as they state, there is no principled reason why the Puerto Rico courts cannot entertain them with reasonable swiftness, particularly if the parties cooperate accordingly; and ask the court to adjudicate Wal-Mart's challenge as swiftly as possible.

2.38    Given that reality, in <u>Shepard</u> this Court found "no basis for plaintiff's contention that said exception is inapplicable to a constitutional challenge to a constitutional challenge to tax laws enacted by the Legislature of Puerto Rico." ***Id***.

2.39    Finally, the financial straits of the Commonwealth of Puerto Rico give more reasons to heed the principles underlying the TIA and the comity doctrine, as expounded by the Supreme Court countless times, as <u>Levin</u> is the last reiteration of the already discussed doctrines.

2.40    Plaintiff also mentions, and quotes from, a Puerto Rico Supreme Court case, <u>Herrero y Otros</u> v. <u>Emmanueli</u>, 179 D.P.R. 277 (2010), to sustain its proposition that even if "it were to prevail in the Puerto Rican courts, those courts cannot be counted upon to award a full refund," because in said decision the PR Supreme Court "refused to order a full refund, despite ruling that the Commonwealth lacked authority to collect the tax at issue. Instead, the Supreme Court of Puerto Rico found that the 'difficult state of our country's public finances' required 'judicial creativity' instead of 'immediate repayment.'" ***Id***., ¶ 52 at 23.

2.41    But that kind of remedial flexibility and sensitivity to the state's public finances is precisely a central consideration for the enactment of the TIA/BA and for the contents of the comity doctrine as recently reiterated by the Supreme Court in <u>Levin</u>, *supra*.

2.42    Wal-Mart's choice of the wrong first instance court would only unduly and futilely delay the adjudication of its objections to the challenged tax, unless this Court heeds the precedents discussed herein and promptly adjudicates the present dismissal motion in order to conclude what is inevitable under every prism which this matter is viewed: That dismissal on jurisdictional grounds is the only path available.

**III.    CONCLUSION AND PRAYER**

Plaintiff's action should be dismissed for lack of first instance subject matter jurisdiction. Wal-Mart's action is a run-of-the-mill example of the need to delay federal adjudication until and when the Supreme Court intervenes as the last resort of the appellate path of a case that must begin in the Puerto Rico courts system. Defendant prays the Court to act accordingly.

**WHEREFORE**, Defendant requests the Court to dismiss the complaint for want of federal jurisdiction.

**RESPECTFULLY SUBMITTED**.

In San Juan, Puerto Rico, on December 21, 2015.

**WE HEREBY CERTIFY** that on this date, we have electronically filed the foregoing Motion to Dismiss with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to counsel of record.

**GONZÁLEZ CASTAÑER, PSC**
128 F.D. Roosevelt Ave., 2nd Floor
San Juan, Puerto Rico 00918-2409
Tel. 787-758-7819/ Fax 787-758-4152


*/s/José Luis González-Castañer*
**JOSÉ LUIS GONZÁLEZ CASTAÑER**
**USDC-PR 201905**
jgonzalez@gcpsc.com


*/s/ Roberto A. Fernández-Quiles*
**ROBERTO A. FERNÁNDEZ-QUILES**
**USDC-PR No. 206301**
rfernandez@gcpsc.com;
rafernandezlaw@gmail.com