# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF PUERTO RICO

WAL-MART PUERTO RICO, INC.,    )
                )
       Plaintiff,   )
                )
   v.          )   Case No. 3:15-cv-03018-JAF
                )
JUAN C. ZARAGOZA-GÓMEZ, in his official )
capacity as Secretary of the Treasury of the  )
Commonwealth of Puerto Rico,    )
                )
       Defendant.  )

## PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS

## TABLE OF CONTENTS

SUMMARY ...................................................................................................1

ARGUMENT ................................................................................................2

I.    FEDERAL COURTS EXERCISE JURISDICTION WHERE, AS HERE, THE TAXPAYER HAS NO ADEQUATE REMEDY IN "STATE" COURT ...................................................................................2

    A.    *The Tax Injunction Act Permits Federal Jurisdiction Where, As Here, the "State" Remedy Is Not "Plain, Speedy, and Efficient"*...................................................................................2

    B.    *The U.S. Constitution Requires Federal Jurisdiction Where, As Here, No Other Adequate Forum Is Available* ...........................4

II.    WAL-MART PR HAS NO ADEQUATE REMEDY IN THE COURTS OF PUERTO RICO ...........................................................6

    A.    *A Refund Request Is Not an Adequate Remedy for Act 72's Exorbitant and Punitive Tax* ...................................................6

        1.    The refund at issue is estimated to be $25.9 million per year...................................................................................7

        2.    There is a significant likelihood that no refund will be available at the end of Wal-Mart PR's refund-request process.........................................................................8

        3.    As applied to Wal-Mart PR, the corporate AMT is "exorbitant and punitive"..............................................18

        4.    The Secretary has the power to delay the refund-request procedure indefinitely ...................................................20

    B.    *Puerto Rico Courts Have Held That Neither Declaratory Judgment nor Injunctive Relief Is Available to a Taxpayer in Wal-Mart PR's Position*.............................................................22

III.    BECAUSE PUERTO RICO'S REMEDIES ARE INADEQUATE, THE COMITY DOCTRINE DOES NOT APPLY ...........................24

CONCLUSION ...........................................................................................24

i

# TABLE OF AUTHORITIES

**Federal Cases**

*Adams Cty. v. N. Pac. Ry. Co.*,
115 F.2d 768 (9th Cir. 1940) ............................................................... 2, 3, 11, 13

*Atl. Coast Line R. Co. v. Doughton*,
262 U.S. 413 (1923) ........................................................................... 13

*Barringer v. Griffes*,
964 F.2d 1278 (2d Cir. 1992) ............................................................. 3, 13

*Carrier Corp. v. Perez*,
677 F.2d 162 (1st Cir. 1982) ............................................................. 7, 19

*Colonial Pipeline Co. v. Collins*,
921 F.2d 1237 (11th Cir. 1991) ......................................................... 3, 13

*Complete Auto Transit, Inc. v. Brady*,
430 U.S. 274 (1977) ........................................................................... 3, 13

*Coors Brewing Co. v. Mendez-Torres*,
678 F.3d 15 (1st Cir. 2012) ............................................................... 24

*Denton v. City of Carrollton, Ga.*,
235 F.2d 481 (5th Cir. 1956) ............................................................. 3, 13, 19

*Dows v. City of Chicago*,
78 U.S. 108 (1870) ............................................................................. 5, 11

*Fair Assessment in Real Estate Ass'n, Inc. v. McNary*,
454 U.S. 100 (1981) ........................................................................... 24

*Georgia R.R. & Banking Co. v. Redwine*,
342 U.S. 299 (1952) ........................................................................... 3, 11

*Great Lakes Dredge & Dock Co. v. Huffman*,
319 U.S. 293 (1943) ........................................................................... 5

*Hillsborough Twp., Somerset Cty., N.J., v. Cromwell*,
326 U.S. 620 (1946) ........................................................................... 3, 12

*Levin v. Commerce Energy, Inc.*,
560 U.S. 413 (2010) ........................................................................... 24

*Marbury v. Madison*,
5 U.S. 137 (1803) ............................................................................... 4

*Parker v. Agosto-Alicea*,
   878 F.2d 557 (1st Cir. 1989) .......................................................................... 3, 7, 18, 22

*Patel v. City of San Bernardino*,
   310 F.3d 1138 (9th Cir. 2002) ................................................................................ 3, 13

*Pleasures of San Patricio, Inc. v. Mendez-Torres*,
   596 F.3d 1 (1st Cir. 2010) ...................................................................................... passim

*Rosewell v. LaSalle Nat. Bank*,
   450 U.S. 503 (1981) ............................................................................................... 11, 12

*Seatec Int'l, Ltd. v. Sec'y of the Treasury*,
   525 F. Supp. 980 (D.P.R. 1981) ..................................................................................... 3

*Shepard v. First Federal Savings Bank*,
   625 F. Supp. 1359 (D.P.R. 1985) ................................................................................. 23

*Spector Motor Serv. v. O'Connor*,
   340 U.S. 602 (1951) ............................................................................................... 3, 13

*Stewart Dry Goods Co. v. Lewis*,
   287 U.S. 9 (1932) .......................................................................................... 2, 8, 9, 10

*Stewart Dry Goods v. Lewis*,
   294 U.S. 550 (1935) ................................................................................................... 11

*Stewart Dry Goods v. Lewis*,
   7 F. Supp. 438 (W.D. Ky. 1933) ............................................................................ 10, 11

*Trailer Marine Transp. Corp. v. Rivera Vazquez*,
   977 F.2d 1 (1st Cir. 1992) ............................................................................................. 3

*U.S. Satellite Broad. Co. v. Lynch*,
   41 F. Supp. 2d 1113 (E.D. Cal. 1999) ........................................................................... 3

*United States v. Livingston*,
   179 F. Supp. 9 (E.D.S.C. 1959) .............................................................................. 4, 13

*Venrod Corp. v. Sec'y of Treasury of Com. of Puerto Rico*,
   704 F. Supp. 21 (D.P.R. 1989) ...................................................................................... 3

**Puerto Rico Cases**

*Camara de Mercadeo v. Acosta Febo*,
   No. KLAN201400193, 2014 WL 1694465 (P.R. Cir. Mar. 25, 2014) ........................... 23

*Herrero y Otros v. Emmanueli*,
   179 D.P.R. 277 (P.R. 2010) .................................................................... 13, 14, 16, 17

*Island Sec. Servs., Inc. v. Estado Libre Asociado de Puerto Rico*,
No. K CD2012-0907, 2013 WL 1099661 (P.R. Cir. Feb. 14, 2013) ............................. 21

*Philip Morris USA, Inc. v. Departamento de Hacienda*,
No. KLAN201500575, 2015 WL 5179006 (P.R. Cir. June 26, 2015) ........................... 21

**Federal Statutes**

28 U.S.C. § 1341 ........................................................................................................ 2, 4

48 U.S.C. § 872 ............................................................................................................. 2

**Puerto Rico Statutes**

13 L.P.R.A. § 33022 ...................................................................................................... 6

13 L.P.R.A. § 33061 .................................................................................................... 15

2011 Internal Revenue Code § 1051.02 ....................................................................... 16

32 L.P.R.A. § 3524 ...................................................................................................... 23

Special Fiscal and Operational Sustainability Act, No. 66-2014 ...................... 14, 15, 18

**Other Authorities**

Brief for Appellants, *Stewart Dry Goods*,
Nos. 27, 28, 29 & 30, 1932 WL 33557 (U.S., filed Oct. 17, 1932) .................. 8, 9, 10, 20

David Fautsch, *The Tax Injunction Act and Federal Jurisdiction: Reasoning from the Underlying
Goals of Federalism and Comity,*
108 Mich. L. Rev. 795 (2010) .......................................................................... 4

Henry M. Hart, Jr., *The Power of Congress to Limit the Jurisdiction of Federal Courts: An
Exercise in Dialectic*,
66 Harv. L. Rev. 1362 (1953) ............................................................................ 4

Martin A. Redish & Curtis E. Woods, *Congressional Power to Control the Jurisdiction of Lower
Federal Courts: A Critical Review and A New Synthesis*,
124 U. Pa. L. Rev. 45 (1975) ............................................................................. 5

Plaintiff Wal-Mart Puerto Rico, Inc., (hereinafter "Wal-Mart PR") responds to the Secretary of the Treasury's ("Secretary's") motion to dismiss, Dkt No. 24, as follows:

## SUMMARY

Act 72 imposes an extraordinary—and plainly unconstitutional—corporate alternative minimum tax ("AMT") on Wal-Mart PR.  If unchecked by this Court, this unlawful AMT will confiscate $25.9 million—in addition to Wal-Mart PR's $19 million "regular" income tax—in the current fiscal year alone, thereby raising Wal-Mart PR's total effective tax rate to an astonishing and unsustainable 91.5% of income.  Complaint ¶31.  The only Puerto Rico remedy available to Wal-Mart PR is the Commonwealth's refund-request process.

A unique combination of three factors renders that refund-request process inadequate under the extraordinary circumstances of this case.  The first factor is that this case—unlike any other since the Great Depression—presents a significant likelihood that no refund will be available at the end of the refund-request process even if the tax is held unconstitutional, due to the "death spiral" of the Commonwealth's finances.  Complaint ¶55 (quoting Governor García Padilla).  That "death spiral" has made some refunds unavailable as a practical matter (in September, the government conceded that it owed $291 million in overdue, unpaid refunds from 2014) and as a legal matter (the recent Fiscal Sustainability Act would limit annual refunds to just $3 million, a mere tenth of one year's unconstitutional AMT).  The second factor is the exorbitant and punitive amount of tax at issue, which may render it impossible for Wal-Mart PR to continue to operate during the refund-request process.  The third factor is the lengthy and uncertain delay Wal-Mart PR must undergo in that process (a process that the Secretary may, in his unreviewable discretion, prolong indefinitely).

These extraordinary circumstances render this case unlike the vast majority of cases that federal courts have decided under the Butler Act and Tax Injunction Act, which involved state tax authorities solvent enough to assure the taxpayer a full refund if the taxpayer prevailed.

In those few cases where, as here, a taxpayer has been confronted with a tax collector that is unable or unlikely to pay refunds, federal courts *have* exercised jurisdiction to hear those taxpayers' constitutional challenges. *Stewart Dry Goods Co. v. Lewis*, 287 U.S. 9 (1932) (per curiam); *Adams Cty. v. N. Pac. Ry. Co.*, 115 F.2d 768, 776 (9th Cir. 1940). Not only the Tax Injunction Act but the Constitution itself requires such federal intervention where no adequate state remedy is available to redress the harms caused by an unconstitutional state tax. It is no surprise that most of the relevant decisions date from the 1930s. That decade saw the Great Depression, which was the last time state governments faced long-term "death spirals" like the fiscal crisis now gripping Puerto Rico.

Because Puerto Rico's refund-request process is inadequate to remedy the harm caused by the unconstitutional and exorbitant corporate AMT, this Court should retain jurisdiction, proceed quickly to the merits, and strike down the tax. The Secretary's motion should be denied.

## ARGUMENT

## I.   FEDERAL COURTS EXERCISE JURISDICTION WHERE, AS HERE, THE TAXPAYER HAS NO ADEQUATE REMEDY IN "STATE" COURT

### A.   *The Tax Injunction Act Permits Federal Jurisdiction Where, As Here, the "State" Remedy Is Not "Plain, Speedy, and Efficient"*

The Tax Injunction Act, though stripping federal courts of jurisdiction over most state tax disputes, nevertheless maintained an important exception: If the state's remedies are not "plain, speedy, and efficient," then the federal court may hear the case. 28 U.S.C. § 1341 (Tax Injunction Act). Though the instant case involves the Butler Act, 48 U.S.C. § 872, not the Tax

2

Injunction Act, the Secretary concedes (and the First Circuit has repeatedly held) that the two statutes are to be construed in the same manner.[1]

When faced with extraordinary circumstances like those present here, federal courts have not hesitated to find that state remedies fail the Tax Injunction Act's "plain, speedy, and efficient" test, and have therefore asserted and exercised their jurisdiction to adjudicate taxpayers' challenges to unconstitutional state taxes. The Secretary's motion is simply incorrect when it asserts that "no federal court has held that a state's court system is incapable of supplying a constitutional plaintiff with a plain, speedy and efficient remedy." Defs' Mot. ¶2.28. There are at least three such decisions from the U.S. Supreme Court,[2] at least five from federal circuit courts,[3] and at least four from federal district courts.[4] Indeed, the Secretary's assertion is

_____

[1] *See* Def's Mot. ¶2.27 (conceding that the "plain, speedy, and efficient" exception applies here); Answer ¶¶ 1.3, 1.17 (conceding that Butler Act is properly interpreted *in pari materia* as the Tax Injunction Act); *see also Trailer Marine Transp. Corp. v. Rivera Vazquez*, 977 F.2d 1, 5 (1st Cir. 1992) ("Despite slightly different wording, the two statutes [the Tax Injunction Act and the Butler Act] have been construed *in pari materia*."); *Parker v. Agosto-Alicea*, 878 F.2d 557, 559 (1st Cir. 1989) (Butler Act does not bar jurisdiction where "no plain, speedy and efficient remedy [is] available in the courts of Puerto Rico").

[2] *Georgia R.R. & Banking Co. v. Redwine*, 342 U.S. 299, 303 (1952); *Spector Motor Serv. v. O'Connor*, 340 U.S. 602, 605 (1951), *overruled on other grounds by Complete Auto Transit, Inc. v. Brady*, 430 U.S. 274 (1977); *Hillsborough Twp., Somerset Cty., N.J., v. Cromwell*, 326 U.S. 620, 629 (1946).

[3] *Patel v. City of San Bernardino*, 310 F.3d 1138 (9th Cir. 2002); *Barringer v. Griffes*, 964 F.2d 1278, 1283 (2d Cir. 1992); *Denton v. City of Carrollton, Ga.*, 235 F.2d 481, 485 (5th Cir. 1956); *Adams Cty. v. N. Pac. Ry. Co.*, 115 F.2d 768, 776 (9th Cir. 1940); *see also Colonial Pipeline Co. v. Collins*, 921 F.2d 1237, 1246 (11th Cir. 1991) (vacating district court's order dismissing for lack of jurisdiction, and ordering additional factfinding on plaintiff's allegation that Georgia's "tax review and appeals process for centrally-assessed taxpayers is not only burdensome and fraught with delays, but that it has ceased to function by any practical measure").

[4] *U.S. Satellite Broad. Co. v. Lynch*, 41 F. Supp. 2d 1113 (E.D. Cal. 1999) (no plain, speedy, and efficient remedy in state court because state statute, as interpreted by state Supreme Court, "bars all actions for declaratory or injunctive relief from a tax"); *Seatec Int'l, Ltd. v. Sec'y of the Treasury*, 525 F. Supp. 980, 982 (D.P.R. 1981) (because the Puerto Rico Supreme Court, at the time, had held that the dormant Commerce Clause did not apply, the Commonwealth courts could not provide "a plain, speedy, efficient, nor adequate remedy"); *Venrod Corp. v. Sec'y of Treasury of Com. of Puerto Rico*, 704 F. Supp. 21, 24 (D.P.R. 1989) ("[A] remedy which

disproved by one of the two sources his motion cites: Ann K. Wooster, *What Constitutes Plain, Speedy, and Efficient State Remedy Under Tax Injunction Act (28 U.S.C.A. § 1341), Prohibiting Federal District Courts from Interfering with Assessment, Levy, or Collection of State Business Taxes* 31 A.L.R. Fed. 2d 237 (2008) (citing and describing twenty-eight federal decisions in which state remedies either did not exist or were found to be inadequate). It appears that the Secretary was led to make his erroneous claim—that "no federal court" ever found state remedies inadequate—by relying on a law student's similarly inaccurate Note.[5]

     B.     *The U.S. Constitution Requires Federal Jurisdiction Where, As Here, No Other Adequate Forum Is Available*

Wal-Mart PR's right to a federal forum is guaranteed not only by the Butler Act and the Tax Injunction Act, but also by the U.S. Constitution. The Constitution requires that an adequate remedy must exist, in some forum, to correct the deprivation of a legal right. *See Marbury v. Madison*, 5 U.S. 137, 166 (1803). Therefore, though Congress generally has the power to restrict the jurisdiction of federal courts to hear state tax disputes, that restriction would violate the Constitution if the state courts' remedies were inadequate. Henry M. Hart, Jr., *The Power of Congress to Limit the Jurisdiction of Federal Courts: An Exercise in Dialectic*, 66 Harv. L. Rev. 1362, 1369 (1953) (taxpayer has constitutional right to "one bite at the apple," in some forum, to challenge unconstitutional state taxes); *id.* at 1369 n.32 (collecting Supreme Court decisions that

---

requires for its availability the selling of the wine at a loss is not plain, speedy and efficient."), *but see Pleasures of San Patricio, Inc. v. Mendez-Torres*, 596 F.3d 1, 8 (1st Cir. 2010) (expressing doubt that "requiring a taxpayer to sell taxed goods at a loss before suing for a refund fails to provide him an adequate remedy"); *United States v. Livingston*, 179 F. Supp. 9, 15 (E.D.S.C. 1959) (state remedy inadequate where state law was in flux, thereby creating grave doubts regarding whether plaintiff could fully recover).

[5] Def's Mot. ¶2.28 (quoting David Fautsch, Note, *The Tax Injunction Act and Federal Jurisdiction: Reasoning from the Underlying Goals of Federalism and Comity,* 108 Mich. L. Rev. 795, 801 (2010)). Defendant's motion accurately quotes the Fautsch Note, which purports to describe the Wooster Annotation. But the student Note, and therefore the Secretary, gets it completely wrong.

establish this point).  Restricting federal jurisdiction, where no adequate state remedy exists, would violate the Due Process Clause of the Fifth Amendment to the U.S. Constitution:

> There exists a due process right to an independent judicial determination of constitutional rights; so long as the state courts remain open, as contemplated by the Madisonian Compromise, congressional limitations on lower federal court jurisdiction do not violate this precept of due process. If, however, for some reason the state courts no longer remain as a viable alternative for the adjudication of constitutional rights, an exclusion of federal court jurisdiction effectively denies access to an independent judicial forum.

Martin A. Redish & Curtis E. Woods, *Congressional Power to Control the Jurisdiction of Lower Federal Courts: A Critical Review and A New Synthesis*, 124 U. Pa. L. Rev. 45, 93 (1975); *see id.* at 93 n. 218 (collecting federal court decisions locating this right in the Due Process Clause).

This principle—that a taxpayer has a constitutional right to an adequate remedy for a constitutional wrong—explains why federal courts, even before Congress enacted the Tax Injunction Act, always satisfied themselves that a state taxpayer had an adequate remedy in state court, before abstaining from exercising federal jurisdiction over the taxpayer's case.  *Great Lakes Dredge & Dock Co. v. Huffman*, 319 U.S. 293, 299 (1943) (the "practice of federal equity courts," prior to the Tax Injunction Act, was to "refus[e] . . . to interfere with the collection of state taxes *unless* the threatened injury to the taxpayer is one for which the state courts afford no adequate remedy" (emphasis added)); *Dows v. City of Chicago*, 78 U.S. 108, 110 (1870) ("No [federal] court of equity will . . . restrain [the] action [of state tax-collection authorities], *except* where it may be necessary to protect the rights of the citizen whose property is taxed, and he has no adequate remedy by the ordinary processes of the law." (emphasis added)).

In short, Wal-Mart PR has a constitutional right to an adequate remedy for Puerto Rico's plainly unconstitutional AMT.  For the reasons set forth below, the only alternative to this Court's jurisdiction—Puerto Rico's refund-request procedure—is inadequate.  Therefore, the Constitution itself confers jurisdiction upon this Court.

## II.     WAL-MART PR HAS NO ADEQUATE REMEDY IN THE COURTS OF PUERTO RICO

The Secretary claims there are two Puerto Rico procedures available to Wal-Mart PR: (1) pay the tax under protest, and then request a refund; or (2) immediately file a petition for declaratory judgment or injunction in the Puerto Rico Court of First Instance.  The first remedy is inadequate under the unique circumstances of this case.  As to the second supposed remedy, the Secretary has repeatedly argued in other cases—and the Puerto Rico courts have agreed— that it simply does not exist.

### A.     A Refund Request Is Not an Adequate Remedy for Act 72's Exorbitant and Punitive Tax

Absent resolution of its claim in this Court, Wal-Mart PR's only alternative remedy is to take the following steps every year: (1) pay that year's AMT; (2) file that year's return; (3) request a refund of that year's AMT; (4) wait (likely for years) to receive the Treasury Department's denial of that particular refund request; (5) appeal that denial to the Puerto Rico Court of First Instance; (6) appeal that court's decision to the Court of Appeals; (7) petition the Puerto Rico Supreme Court for certiorari; and (8) petition the Supreme Court of the United States for certiorari.  Complaint ¶50; *see* 13 L.P.R.A. § 33022 (return must be filed, and tax paid, before taxpayer may request a refund); *id.* § 33061(b) (taxpayer may not proceed in court until Treasury Department denies the refund request).

On very different occasions, when resolving somewhat different arguments, the First Circuit has held that this refund-request process provided other taxpayers with a sufficiently "plain, speedy, and efficient" remedy, such that the federal courts lacked jurisdiction to hear those taxpayers' disputes with the Secretary.  *Pleasures of San Patricio, Inc. v. Mendez-Torres*, 596 F.3d 1 (1st Cir. 2010) (in case involving $6.15 excise tax on shipments of "little cigars," rejecting taxpayer's argument that refund-request procedure was inadequate because it would

require taxpayer to first sell at a loss before requesting a refund); *Parker v. Agosto-Alicea*, 878 F.2d 557 (1st Cir. 1989) (in case involving dispute over whether U.S. federal employees' cost-of-living salary adjustments were subject to Puerto Rico income tax, rejecting taxpayer's argument that remedy was too long delayed where, by the time the First Circuit's opinion was issued, the Secretary had issued the refund denial); *Carrier Corp. v. Perez*, 677 F.2d 162 (1st Cir. 1982) (in case involving dispute over 10% increase in excise tax applicable to taxpayer's shipments of electronic goods to Puerto Rico, rejecting taxpayer's argument that refund-request procedure was inadequate because Puerto Rico courts would not apply the dormant Commerce Clause).

Those three cases do not control the outcome here because this case involves extraordinary circumstances not present in any of the First Circuit's precedents. Here, a unique combination of three factors renders Puerto Rico's refund-request process inadequate: (1) the significant likelihood that no refund will be paid to Wal-Mart PR, due to the "death spiral" of the Commonwealth's finances and the Fiscal Sustainability Act's limits on payments of judgments against the Commonwealth; (2) the exorbitant amount of the tax; and (3) the lengthy and uncertain delay Wal-Mart PR must undergo in the refund-request process (a process that the Secretary may, in his unreviewable discretion, prolong indefinitely). For the reasons below, these unique factors set this case apart from the First Circuit's precedents. Under Supreme Court authorities, federal jurisdiction is appropriate here.

1.    The refund at issue is estimated to be $25.9 million per year

The facts—which the parties are now working to establish by taking the jurisdictional discovery ordered by this Court at the hearing on December 23—will demonstrate that the total refund at issue is enormous. For now, Wal-Mart PR has alleged in good faith and on information and belief that the total refund may be reasonably estimated as follows: $25.9 million in unconstitutional corporate AMT per year, multiplied by the number of years the refund-request

process is estimated to take.  Wal-Mart PR believes and has pled that the process would take approximately six years, during which it would have paid unconstitutional AMT taxes of approximately $155 million. Complaint ¶¶50-51.  The six-year estimate is based upon the personal experience of undersigned Puerto Rico counsel, and the delays evidenced by the two refund cases cited below.  *See infra*, at pages 20-22 (discussing *Philip Morris* and *Island Security*).  The Secretary's motion offers no persuasive evidence that six years is an unreasonable estimate.[6]

> 2.  There is a significant likelihood that no refund will be available at the end of Wal-Mart PR's refund-request process

Few federal cases question whether the state will actually be able to pay refunds to a taxpayer.  (The First Circuit never has had occasion to question whether Puerto Rico had the ability to pay tax refunds.)  It is no surprise that the few cases to have done so were decided during the Great Depression, when some states and counties faced an economic downturn equivalent to Puerto Rico's "death spiral."  These cases stand for the proposition that a refund-request procedure is inadequate where, as here, the state may not be able to pay the refunds if the taxpayer prevails.

In *Stewart Dry Goods Co. v. Lewis*, 287 U.S. 9 (1932) (per curiam) the Supreme Court reversed the lower courts' dismissal of four large retailers' complaints for an injunction against Kentucky's gross-revenues tax.  That tax, the large retailers alleged, discriminated against them (because they paid the great bulk of it) and in favor of their smaller competitors (who paid very

---

[6] The Secretary's motion to dismiss suggests that the six-month delay in *Pleasures of San Patricio* would be a more appropriate benchmark.  Defs' Mot. ¶2.35 & n.5.  It is not, for three reasons.  The delay in that case related solely to the amount of time it took the Court of First Instance to act.  *See* 596 F.3d at 4.  All that *San Patricio* tells us, then, is that sometimes, one of the eight steps described above (namely, the time for the Court of First Instance to issue a decision) may be six months.

little); it also violated the dormant Commerce Clause.  *See* Brief for Appellants, *Stewart Dry Goods*, Nos. 27, 28, 29 & 30, 1932 WL 33557, at *2 (filed Oct. 17, 1932) (describing plaintiffs' legal claims) (hereinafter, "*Stewart* Appellants Brief").  The tax in question was, for the time period, "enormous"—nearly half a million dollars over three years.  *Id.* at *6.  Though that additional tax burden would not "render the[ large retailers] insolvent," it would "seriously embarrass them in the operation of their business."  *Id.* at *39.

The district court dismissed plaintiffs' lawsuit "upon the ground that plaintiffs had an adequate remedy at law."  *Stewart Dry Goods*, 287 U.S. at 10.  Specifically, the district court held that the large retailers "were required to pay the taxes under protest and bring an action under [a procedure provided in] Section Ten [of the Kentucky tax bill], if they claimed the taxing measure was unconstitutional."  *Stewart* Appellants Br., 1932 WL 33557, at *41.  Kentucky's Section Ten was in several respects superior to the Puerto Rico refund-request procedure at issue here:  Section Ten (unlike Puerto Rico's procedure) did not require the taxpayer to first wait for the tax authorities to issue a formal denial of the taxpayers' refund requests; instead, as soon as the taxpayers had paid their taxes under protest, they were permitted immediately to sue a state official (the "Auditor of Public Accounts") in state court. *Id.* at *7-*8 (quoting Section Ten).

The problem with Section Ten was not the scope of the remedy, its speed, or its efficiency; the problem, instead, was the significant likelihood that the plaintiffs would never get their money back because Kentucky was bankrupt.  In *Stewart Dry Goods*, as here, the plaintiffs' money (even though paid under protest) would not be set aside in a separate, segregated account; instead, their money would be "paid out immediately under Section 9 [of the Kentucky tax bill], one-half to be used in re‑building the State penal and charitable institutions and the other half in paying off the public debt."  *Stewart* Appellants Br., 1932 WL 33557, at *28.  Rather than obtain

a refund of their money, plaintiffs instead would obtain merely a "warrant" upon the Kentucky Treasury's General Fund—a warrant that might not be paid for years, if ever. *Stewart Dry Goods*, 287 U.S. at 11 (describing plaintiffs' allegations "that there are now outstanding many such warrants . . . which have been outstanding since [five years ago], and cannot be collected by the owners or holders for lack of funds in the treasury"). Worse still, plaintiffs' warrants might receive no higher priority than other obligations of the state to be paid from the general fund—Kentucky law directed the Treasurer to pay all warrants "in the order they were issued." *Stewart* Appellants Br., 1932 WL 33557, at *25.

The Supreme Court agreed with plaintiffs, reversed the lower court's dismissal, and remanded for detailed fact-finding about the availability of refund payments. *Stewart Dry Goods*, 287 U.S. at 11 (on remand, lower courts should make a "determination upon evidence with respect to the questions of the status of outstanding warrants upon the general fund in the state treasury, and whether warrants of the sort contemplated by section 10 of the act in question are accorded preference in payment over other warrants"). This unanimous, per curiam decision demonstrates the Court's opinion that if the plaintiffs' allegations were true—if, that is, the refund process was not certain to result in prompt repayment of any unconstitutional tax—then federal jurisdiction would exist.

On remand, the three-judge panel heard additional evidence, and then found that Section 10 was not an adequate remedy at law. The new evidence showed that the Kentucky Treasurer, through informal procedures, had taken steps to ensure that taxpayers' warrants were promptly repaid. *Stewart Dry Goods v. Lewis*, 7 F. Supp. 438, 440 (W.D. Ky. 1933) (treasurer's practice was to pay taxpayers' warrants first, and he "ke[pt] himself in financial position to refund all taxes which are paid under legal protest"). Nevertheless, the Treasurer's informal steps were

insufficient, the district court held, because there was no legal authority for the Treasurer to favor taxpayers in this way. *Id.* Therefore, the District Court held, "the remedy at law given by section 10 of the act does not afford that certainty necessary to repel equity jurisdiction." *Id.* The Supreme Court again heard the plaintiffs' appeal and, without any further discussion of jurisdiction, struck down Kentucky's gross-sales tax as violating the Equal Protection Clause. *Stewart Dry Goods v. Lewis*, 294 U.S. 550 (1935).

Because the *Stewart Dry Goods* case pre-dated the Tax Injunction Act by five years, the precise legal test on the jurisdictional issue was not whether the Kentucky remedy was "speedy, plain and efficient" (the test under the Tax Injunction Act) but rather whether the Kentucky procedure was simply "adequate," under the standard used for many years by the federal courts when determining whether to exercise their equitable discretion to abstain from state tax disputes. *See, e.g., Dows*, 78 U.S. at 110 (inquiry, under principles of federal equity, is whether the state taxpayer has an "adequate remedy by the ordinary processes of the law").

That difference in standards does not lessen the impact or import of the *Stewart Dry Goods* decision, however. "[P]rior federal equity cases," like *Stewart Dry Goods*, "may . . . be instructive on whether a state remedy is 'plain, speedy and efficient'" under the Tax Injunction Act. *Rosewell v. LaSalle Nat. Bank*, 450 U.S. 503, 525 n.33 (1981). That is why other, later cases, decided under the Tax Injunction Act, reach the same result, and retain federal jurisdiction if the state appears unable to actually repay the challenged tax. *Adams Cty. v. N. Pac. Ry. Co.*, 115 F.2d 768, 776 (9th Cir. 1940) (state's refund-request procedure was not a plain, speedy and efficient remedy, for purposes of the Tax Injunction Act, because the "effect of the statutory refund action is rendered doubtful and therefore inadequate" because "some of the defendant counties are insolvent" and thus judgment for the taxpayer would "result only in the issuance of

11

uncollectible warrants"); *see also Georgia R.R. & Banking Co. v. Redwine*, 342 U.S. 299, 303 (1952) (finding that the "suit for refund after payment [is not a plain, speedy and efficient remedy under the Tax Injunction Act because it] is applicable only to . . . less than 15% of the total taxes in controversy").

These precedents indicate that Puerto Rico's probable inability to pay refunds of Wal-Mart PR's unconstitutional AMT renders the Commonwealth's refund-request remedy inadequate.  As in *Stewart Dry Goods* or *Adams County*, here, Puerto Rico has ceased to pay at least some tax refunds.  Moreover, Puerto Rico's refund-request procedure presents two additional barriers to Wal-Mart PR obtaining a refund—barriers that did not appear in those cases.  First, the Puerto Rico Supreme Court has demonstrated it will not issue judgment for a complete refund, even where the tax is found to be unlawful; second, the Commonwealth's new Fiscal Sustainability Act forbids it from paying more than $3 million a year from any such judgment.

       a.     Puerto Rico is unable to pay refunds, and will not be able to pay them for the foreseeable future

As Wal-Mart PR has alleged in detail, and as jurisdictional discovery will confirm, Puerto Rico has ceased to pay at least some tax refunds and is unlikely to be able to pay them in the foreseeable future.  *See* Complaint ¶¶54-66.  At the very least, such refund payments are uncertain—and uncertain remedies are inadequate.  *Rosewell*, 450 U.S. at 516-17 ("uncertainty concerning a State's remedy may make it less than 'plain' under [the Tax Injunction Act]"); *Hillsborough Twp., Somerset Cty., N.J., v. Cromwell*, 326 U.S. 620, 629 (1946) ("[S]o much uncertainty surrounds the New Jersey remedy to protect the taxpayer's federal right that a refusal to dismiss the bill was a proper exercise of discretion.").  Numerous other federal cases also hold

that uncertainty about the availability of a state remedy will render that remedy inadequate, and federal courts may exercise jurisdiction.[7]

        b.    Puerto Rico courts may decide not to order a refund, even if they determine that the tax is unlawful

It is also uncertain whether the Puerto Rico courts would order a full refund even if Wal-Mart PR were to prevail. In *Herrero y Otros v. Emmanueli*, 179 D.P.R. 277 (P.R. 2010),[8] a class of taxpayers who had paid an invalid tax on luxury automobiles sued the Secretary of Transportation to recover their tax payments. The Supreme Court agreed with the taxpayers that the tax was never lawfully enacted, and that the Secretary's action in collecting it had been "*ultra vires* and, therefore, radically null." *Id.* at 309. Nevertheless, the Court refused to order a full

_____

[7] *See also Spector Motor Serv. v. O'Connor*, 340 U.S. 602, 605 (1951) (district court had jurisdiction because of the "uncertainty of the adequacy of a remedy in the state courts"), *overruled on other grounds by Complete Auto Transit, Inc. v. Brady*, 430 U.S. 274 (1977); *Atl. Coast Line R. Co. v. Doughton*, 262 U.S. 413, 426 (1923) (applying equity principles prior to Tax Injunction Act, finding that North Carolina's refund procedure "is a recent one which appears not to have been construed and applied by the highest court of the state. In the absence of such decision, we cannot say the remedy at law is plain and adequate"); *Patel v. City of San Bernardino*, 310 F.3d 1138 (9th Cir. 2002) (city's continued collection of taxes even after state court struck down tax made the remedy uncertain and thus, there was no plain, speedy, and efficient remedy); *Barringer v. Griffes*, 964 F.2d 1278, 1283 (2d Cir. 1992) (no plain, speedy, and efficient remedy due to uncertainty in Vermont law regarding whether taxpayer could appeal to the courts from a tax commissioner's administrative decision and the scope of any such review); *Denton v. City of Carrollton, Ga.*, 235 F.2d 481, 485 (5th Cir. 1956) (no plain, speedy, and efficient remedy where the tax was burdensome and the "right of recovery under Georgia law [was] doubtful"); *Adams Cty. v. N. Pac. Ry. Co.*, 115 F.2d 768, 776 (9th Cir. 1940) (the "effect of the statutory refund action is rendered doubtful and therefore inadequate in the present case owing to the fact, specifically found by the trial court, that some of the defendant counties are insolvent and that in consequence a judgment for plaintiff in such an action would, as to such counties, result only in the issuance of uncollectible warrants"); *see also Colonial Pipeline Co. v. Collins*, 921 F.2d 1237, 1246 (11th Cir. 1991) (vacating district court's order dismissing for lack of jurisdiction, and ordering additional factfinding on plaintiff's allegation that Georgia's "tax review and appeals process for centrally-assessed taxpayers is not only burdensome and fraught with delays, but that it has ceased to function by any practical measure"); *United States v. Livingston*, 179 F. Supp. 9, 15 (E.D.S.C. 1959) (state remedy inadequate where state law was in flux, thereby creating grave doubts regarding whether plaintiff could fully recover).

[8]   Wal-Mart PR will promptly file a certified English translation of this and all other Spanish-language authorities cited herein. Due to the holidays and Wal-Mart's PR desire to submit this opposition promptly to the Court, Wal-Mart PR has not yet been able to obtain these translations.

refund, and instead found that the "difficult state of our country's public finances" required "judicial creativity" instead of an "immediate repayment." *Id.* Wal-Mart PR has no assurance the Puerto Rico Supreme Court would not do the same in this case, given the size of the refund that would be due to Wal-Mart PR. The Secretary's motion to dismiss, far from distancing himself from *Herrero*, instead does just the opposite, and *confirms* that the *Herrero* result is what he hopes for. The Secretary argues that *Herrero* demonstrates the "kind of remedial flexibility and sensitivity to the state's public finances [that] is precisely a central consideration for the enactment of the TIA/BA." Defs' Mot. ¶2.41. Just the opposite is true. *Herrero* demonstrates the kind of willful failure to provide an adequate remedy that justifies federal jurisdiction to enforce federal law.

At the very least, *Herrero* adds to the uncertainty that Wal-Mart PR will ever be able to obtain a judgment ordering an immediate refund of its tax payments, even if the Puerto Rico courts determine that the AMT is unlawful. *See supra*, pages 12-13 & n.7 (collecting authorities holding that uncertainty about a state remedy renders that remedy inadequate).

      c.    The Fiscal Sustainability Act would bar Puerto Rico from paying the refunds even if funds were available, and even if the Puerto Rico courts were to enter judgment for Wal-Mart PR

The "Special Fiscal and Operational Sustainability Act," (hereinafter, "Fiscal Sustainability Act"), No. 66-2014, was enacted on June 17, 2014. Section 28 orders the Executive to pay judgments against the Commonwealth according to specific "payment plans," which vary based on the size of the judgment.

For judgments greater than $20 million—which would include any judgment entered in this case, even for just one year of unconstitutional AMT—the required payment plan would prohibit the Secretary from paying more than $3 million a year to Wal-Mart PR. *Id.* § 28(e). In

14

some years, if there are "no funds available to honor the payment plan," the Secretary could "postpone" that payment "for the following fiscal year, thus said payment plan shall be automatically extended for the number of unpaid installments."  *Id.* § 28(g).  The payment plan "shall remain in effect for the time frame established in the payment plan, and shall not be affected or invalidated by the expiration of the effectiveness of this Act."  *Id.* § 28 (i).

The Fiscal Sustainability Act would apply to any judgment Wal-Mart PR would obtain at the end of the refund-request procedure.  *See id.* § 28 (Fiscal Sustainability Act's payment plans required for any "final and binding judgment . . . whereby . . . the Commonwealth of Puerto Rico [is] compelled to make a disbursement of funds chargeable to the General Fund"); 13 L.P.R.A. § 33061(a) (describing court orders that require refund payments as "judgments"); *id.* § 33063(c) (refund payments are "chargeable to the General Fund").

Thus, even if Wal-Mart PR were to obtain a judgment this spring, regarding its payment of the first $25.9 million of unlawful AMT taxes, the most favorable "payment plan" possible under the Act would still require nearly nine years to refund that one year of unconstitutional AMT.  In the more probable scenario, in which it might take six years for Wal-Mart PR to obtain a judgment, the required payment plan would take at least 50 years.  Could any remedy be less plain, speedy and efficient?

       d.     No credits or offsets are likely to be available to Wal-Mart PR; even if they were, credits are not an adequate remedy

Wal-Mart PR does not believe that a credit would be reasonably available to it to recoup the unconstitutional taxes paid under Act 72.  The Secretary's motion to dismiss does not mention credits at all, but his Answer does, and counsel for the Secretary emphasized this issue before the Court during the hearing on December 23.

There are two possible credits the Secretary may be attempting to invoke.  The first is called the "AMT Credit."  This is the credit the Secretary describes in his Answer.  *See* Answer ¶¶ 1, 6, 21, 47, Dkt No. 32.  A taxpayer's total AMT Credit is equal to the amount of AMT the taxpayer has previously paid (less any AMT Credit the taxpayer may have already used).  *See* 2011 Internal Revenue Code § 1051.02.  If a taxpayer with AMT Credit has a tax year in which that taxpayer's "regular" income tax rises above the "tentative minimum tax," so that no AMT is due in that year, the taxpayer may use its AMT Credit to reduce the now-higher "regular tax." *Id.*  Specifically, the taxpayer may subtract, from its "regular" tax liability for that year, 25% of the difference between that year's "regular" tax and that year's "tentative minimum tax."  That amount is then subtracted from the taxpayer's total AMT Credit available for future years.  If this practice continues for long enough, and no additional AMT credit is accrued, then eventually the taxpayer will exhaust all of its AMT Credit, and will return to paying the full "regular" tax.  *Id.*

The AMT Credit is not an adequate remedy for Wal-Mart PR's unconstitutional corporate AMT payments, for two reasons.  *First,* the AMT Credit would only be worth approximately $1.3 million per year.[9]  At that rate—even assuming no further changes in the tax code—it would take 20 years for Wal-Mart PR to recoup just one year's worth of unconstitutional AMT ($25.9 million).  *Second*, the AMT Credit is not actually a "remedy" at all.  Wal-Mart PR, like any other taxpayer, would be entitled to the AMT Credit even if Wal-Mart PR did nothing to protest or challenge the unconstitutional AMT.  Thus, if the Secretary's argument is accepted, then it

[9] Wal-Mart PR's last typical tax year was its Fiscal Year ending in January 2013.  (In subsequent years, Wal-Mart PR's taxes were distorted by the gross receipts tax, which was then repealed shortly before Act 72 became law.  *See* Complaint ¶44.)  In that year, Wal-Mart PR's regular tax was $18.6 million, and its tentative minimum tax was $13.4 million (that amount is based only on the traditional measure of AMT, and does not include the unconstitutional Tangible Property Component).  The difference is $5.2 million, and twenty-five percent of that is $1.3 million. Therefore, if Wal-Mart PR has another typical tax year, like the year it had FY 2013, then Wal-Mart PR would only be entitled to a $1.3 million reduction in its regular tax.

would logically follow that Puerto Rico could do away with any refund process for its AMT, and could still invoke the Butler Act on the ground that the AMT Credit alone suffices as a remedy.

At the hearing, the Secretary's counsel suggested a different type of credit (though it is not mentioned in his Answer).  He suggested that a credit that would become available to Wal-Mart PR at the moment the Puerto Rico courts enter final judgment ordering a refund, and that Wal-Mart PR would immediately be permitted to cease paying all taxes of any kind, until the judgment was completely satisfied.  *See* Hearing Tr. (Dec. 23, 2015), at 17-19.  The Court ordered the Secretary to "file as soon as possible the Statute and the regulation that says that that credit is possible," *id.* at 29:15-17, but to date he has not done so.  Nor has the Secretary provided any example of such a credit ever having been applied.  The idea seems to be contrary not only to the Fiscal Sustainability Act, just discussed, but also to 13 L.P.R.A. § 33022(a)(1), which explains the procedure to be followed when a taxpayer has made an "excess payment" of tax.  Once the Secretary (or a court) has determined that a taxpayer has paid more income tax than he owed, then Section 33022(a)(1) provides the mechanism to return the overpayment to the taxpayer:  First, the taxpayer will receive a "credit" as to any tax liability that is "then enforceable" at that time; once that credit has been applied, "any remainder [of the overpayment] shall be immediately refunded to the taxpayer."  *Id.*  Because the refund-request procedure assumes that Wal-Mart PR continues to pay its taxes, the additional tax liability "then enforceable" against Wal-Mart PR at the time the refund is ordered will be relatively small— certainly no more than one year's taxes.  That means the corresponding "credit" will be equally small.  The "remainder," then, must be "immediately refunded," not kept on the Secretary's books as a credit to be applied against future tax liabilities as counsel suggested.  *Id.*

This notion of an immediate refund, of course, runs headlong into the roadblock of the Fiscal Sustainability Act and Section 33022(a)(1), which prevent immediate refunds of the size to which Wal-Mart PR would be entitled.  Nor is it even clear that Wal-Mart PR would be able to use such a credit (even if it existed).  To use such a credit, Wal-Mart PR would first have to survive six years of paying a 91.5% (or higher) unconstitutional AMT, with whatever operational changes that tax regime might force, and, after prevailing in the Puerto Rico courts, would have to operate, at pre-Act 72 levels, for another eight years—and that is without accounting for interest due.[10]  All kinds of contingent events may prevent such a credit from ever being used; this kind of radical, long-term uncertainty would render such a credit procedure inadequate, even assuming it were available under Puerto Rico law.  *See supra*, pages 12-13 & n.7 (uncertainty about a state remedy renders that remedy inadequate).  The Secretary has not pointed to a single case where a federal court held that the availability of such a convoluted and uncertain tax credit, only usable (if at all) decades in the future, constituted an adequate remedy sufficient to oust the federal courts of jurisdiction.

        3.      As applied to Wal-Mart PR, the corporate AMT is "exorbitant and punitive"

The First Circuit has never considered a case like this one, in which the unconstitutional tax is so exorbitant and punitive that it may pose an existential threat to the taxpayer.  Act 72 dwarfs the taxes at issue in the relevant First Circuit caselaw—not only in absolute terms, but also in terms of the effect on the day-to-day operations if not existence of the taxpayer.  *See Pleasures of San Patricio*, 596 F.3d at 9 n.5 (dispute over $6.15 excise tax on shipments of "little cigars"); *Parker*, 878 F.2d at 558 & n.1 (dispute over Puerto Rico income tax on U.S. federal

---

[10] Wal-Mart's regular income tax for the Fiscal Year ending January 2015 was $19.2 million.  At that rate, it would take slightly less than eight years to use up $155 million in credit.

employees' cost-of-living salary adjustments); *Carrier Corp.,* 677 F.2d at 163 n.1 (dispute over 10% increase in taxpayer's excise tax, over that of his local competitors).

Act 72's increased corporate AMT is more analogous to the anti-union tax considered by the Fifth Circuit in *Denton v. City of Carrollton, Ga.*, 235 F.2d 481 (5th Cir. 1956), which the First Circuit cited favorably in footnote 5 of the *San Patricio* opinion.  In *Denton*, the City of Carrollton, Georgia, had enacted a $1,000 "license" tax on anyone wishing to work as a labor organizer; in addition to the initial $1,000 tax, the organizer would thereafter be required to pay an additional $100 daily "tax" for each day worked in the City.  Failure to pay was punishable by two months' imprisonment or a $100 fine.  The district court dismissed the case under principles of equity, on the ground that the plaintiff, an organizer, had not shown irreparable injury.  *Id.* at 484.  The Fifth Circuit reversed, and held that this tax was so "exorbitant and punitive" that "[t]o require the payment of any such sum . . . presents such a heavy burden that to decline equitable relief would be to deny judicial review altogether."  The *Denton* court further explained that the Tax Injunction Act would not bar jurisdiction, because the plaintiff's ability to recover a refund was so uncertain.  *Id.* at 485 & n.6 ("The large amount of money required to pre-pay for a test [of the tax's legality] becomes an aggravated factor if actual doubt exists concerning the recoverability of such sums in the event the basic law is ultimately declared invalid.").

The Secretary's motion to dismiss asserts—with no evidence—that an additional $25.9 million annual AMT, atop the company's pre-existing $19 million annual "regular tax," is an expense that Wal-Mart PR "can indeed pay."  Def's Mot. ¶2.33.  On this basis, the Secretary attempts to distinguish Wal-Mart PR from the organizers in *Denton*, who faced such a heavy tax burden that they were unable (the Fifth Circuit assumed) to pay it at all.  235 F.2d at 484.  The Secretary's argument is flawed because it fails to account for the lengthy delay that Wal-Mart PR

will face, during which time the company will be forced to continue paying this exorbitant and unlawful tax.  The fact that a business is able to pay an effective tax rate of 91.5% for one quarter, or even for one year, is no guarantee that it will be able to sustain that level of tribute for six years or longer.  Nor is the current 91.5% effective tax rate fixed; it could easily rise above 100% if Wal-Mart PR were to transfer more goods or earn less profit on them.  *See* Complaint ¶33.  No business could be expected to continue operating if it is taxed on more than 100% of its income, thus guaranteeing that it must lose money in order to operate.

Indeed, no business can be expected to operate for long in an environment in which 91.5% of its income is confiscated by the tax authorities.  It bears emphasizing that Wal-Mart PR's parent corporation, Wal-Mart Stores, Inc., is not a plaintiff here and is not subject to Puerto Rico income tax.  The gross revenues and income of Wal-Mart Stores, Inc. are not at issue here and cannot be considered in weighing whether a $26 million tax on Wal-Mart PR, an effective tax rate of 91.5%, is "exorbitant."

Moreover, the Supreme Court's *Stewart Dry Goods* decision indicates that a plaintiff's ability to pay the tax does not, of itself, oust the federal court of jurisdiction.  In *Stewart Dry Goods*, the plaintiffs acknowledged that the tax would not "render the[m] insolvent."  *Stewart* Appellants Br., 1932 WL 33557, at *39.   The Court nevertheless reversed the lower court's dismissal for lack of jurisdiction and ultimately struck down the tax.  *See supra*, pages 8-11..

4.   <u>The Secretary has the power to delay the refund-request procedure indefinitely</u>

Puerto Rico's refund-request procedure is slow and uncertain—not merely because of potential delays in the Puerto Rico court system, but also because the Secretary has the power to bring the procedure to a complete standstill simply by taking no action on Wal-Mart PR's refund request.  *See* 13 L.P.R.A. § 33061(b).

Nothing in the Puerto Rico tax code sets any rule or even any standard limiting the time that the Secretary may wait before issuing such a denial, and recent cases demonstrate that the Secretary is capable of delaying this step for six years. *Philip Morris USA, Inc. v. Departamento de Hacienda*, No. KLAN201500575, 2015 WL 5179006, at *6 (P.R. Cir. June 26, 2015) (noting taxpayer filed refund requests on January 27, 2009); *id.* at *1 (taxpayer filed petition for writ of mandamus nearly six years later on November 18, 2014; in response, Secretary argued that no law set a deadline for him to respond to such requests).  As a result, the Secretary would be able to indefinitely delay resolution of Wal-Mart PR's claim—during which time Wal-Mart PR would continue to be subject to the unconstitutional AMT—by not issuing a formal denial of the refund request.  The Secretary has a number of procedural mechanisms by which to delay issuing a denial.[11]  There is no reason to believe that Wal-Mart PR could force a denial through a mandamus proceeding.  *Compare Philip Morris*, 2015 WL 5179006, at *6 (affirming lower court's refusal to grant a writ of mandamus, because Secretary's refusal is within his discretion, even where some refund requests have been pending for years without a response, and even where the taxpayer's right to a refund is "crystal clear"), *with Island Sec. Servs., Inc. v. Estado Libre Asociado de Puerto Rico*, No. K CD2012-0907, 2013 WL 1099661, at *6 (P.R. Cir. Feb. 14, 2013) (granting writ of mandamus because taxpayer's requests had been pending for "nine, seven, and five" years and because the Secretary appeared to have acted "with astounding sluggishness or, in the worst of the cases, with manifest apathy").  The uncertainty over how long the Secretary would choose to delay the denial of Wal-Mart PR's refund request, and the

---

[11] For example, Section 6051.02 of the 2011 Internal Revenue Code provides that the Secretary may request documentation and declarations from officials of a company to verify that a tax return is correct.  In the experience of undersigned Puerto Rico counsel, the Treasury Department routinely uses this provision to audit the income tax returns wherein refunds that exceed $100,000 are requested.  These audit procedures may detain the issuance of a refund request concession or denial depending on the efficiency by which the audit is handled.

uncertainty of the mandamus remedy, make even more clear that the remedy provided under Puerto Rico law is inadequate. *See supra*, pages pages 12-13 & n.7 (collecting authorities for the proposition that uncertainty about a state remedy renders that remedy inadequate).

Apart from any delay caused by the Secretary, the Puerto Rico courts may also take a significant amount of time to hear and decide the case. Through jurisdictional discovery, Wal-Mart PR will develop evidence to estimate that delay.

Of the three First Circuit precedents considering the adequacy of Puerto Rico's refund-request process, just one—*Parker*—considered the length of delay. In that case, the Secretary had delayed issuing the refund denial for four years. During oral argument, the judges asked the Secretary's lawyer what was taking so long, and the Secretary issued his denial two days later. *Parker*, 878 F.2d at 560. That delay may have been acceptable in *Parker* because the tax at issue was relatively minor (whether Puerto Rico was permitted to apply its income tax to a federal employee's cost-of-living adjustment (COLA)). Here, by contrast, each year costs $25.9 million. As discussed above, there is no guarantee that Wal-Mart PR will be able to sustain this level of tribute—which could, in the future, easily come to exceed 100% of its income—for years on end. *See supra*, at pages 18-20. Thus, the factor of delay, while present in other cases, takes on a unique import in this case, because in this case the delay involves an exorbitant tax burden and a significant likelihood that no refunds will be available.

       B.      *Puerto Rico Courts Have Held That Neither Declaratory Judgment nor Injunctive Relief Is Available to a Taxpayer in Wal-Mart PR's Position*

The Secretary also claims that Wal-Mart PR could immediately file a complaint for declaratory judgment or injunctive relief in Puerto Rico's Court of First Instance. Defs' Mot. ¶2.37. The Secretary's assertion is directly contrary to the position he has repeatedly taken in Puerto Rico courts, which have held that these remedies are *not* available to a taxpayer in

Wal-Mart's position.   The Puerto Rico courts have held that a taxpayer in Wal-Mart PR's position has only one procedure available under Puerto Rico law to challenge an unconstitutional tax—and that is the refund-request procedure just discussed.

The Secretary cites just one authority in support of its argument that Wal-Mart PR might be able to obtain declaratory judgment or injunctive relief from the Puerto Rico courts: *Shepard v. First Federal Savings Bank*, 625 F. Supp. 1359, 1363-64 (D.P.R. 1985).   This Court distinguished the *Shepard* case at the December 23 hearing.   Hearing Tr., at 35.   Importantly, and as noted at the December 23 hearing, the Secretary fails to cite a much more recent decision from the Puerto Rico Court of Appeals, which demonstrates that these remedies are not available.   *Id.* (discussing *Camara de Mercadeo v. Acosta Febo*, No. KLAN201400193, 2014 WL 1694465 (P.R. Cir. Mar. 25, 2014)).

In *Camara de Mercadeo*, the plaintiffs were retail businesses and a trade association of retailers.   Those plaintiffs sued the Secretary of the Treasury, challenging a new tax on gross receipts.   In their complaint, plaintiffs sought a declaratory judgment and an injunction against enforcing the gross-receipts tax, which they contended violated the U.S. Constitution.

In opposing the taxpayers in *Camara de Mercadeo*, the Secretary argued (in exact contradiction of his arguments to this Court) that the Court of First Instance lacked jurisdiction to hear the taxpayers' claim for declaratory judgment or injunctive relief, and that the taxpayers' only remedy was the refund-request process.   *See id.* at *2 (describing state's argument, which was based on Section 678 of the Code of Civil Procedure of 1933, codified at 32 L.P.R.A. § 3524(7)).   The Court of First Instance agreed with the Secretary, and the Court of Appeals affirmed.   *Id.* at *12.   At the very least, after *Camara de Mercadeo*, Wal-Mart PR's ability to obtain declaratory judgment or injunctive relief in the Puerto Rico courts is deeply

23

uncertain.  *See supra*, pages pages 12-13 & n.7 (collecting authorities for the proposition that uncertainty about a state remedy renders that remedy inadequate).

## III.   BECAUSE PUERTO RICO'S REMEDIES ARE INADEQUATE, THE COMITY DOCTRINE DOES NOT APPLY

In addition to the Butler Act and the Tax Injunction Act, the Secretary also invokes the doctrine of comity to argue that this Court should decline jurisdiction.  The comity argument fails for the reasons already discussed.  Comity does not apply where, as here, the state's administrative and judicial processes do not provide an adequate remedy; comity's test for whether a local remedy is adequate is the same as the test under the Tax Injunction Act.  *See Fair Assessment in Real Estate Ass'n, Inc. v. McNary*, 454 U.S. 100, 116 n.8 (1981) ("Numerous federal decisions have treated the adequacy of state remedies [under the TIA], and it is to that body of law that federal courts should look in seeking to determine the occasions for the comity spoken of today."); *see also Coors Brewing Co. v. Mendez-Torres*, 678 F.3d 15, 28 (1st Cir. 2012) (citing and applying *Fair Assessment in Real Estate Association*'s test).

The Supreme Court's most recent comity decision, *Levin*, reaffirmed that the adequate-remedy exception remains alive and well under the comity doctrine.  *Levin v. Commerce Energy, Inc.*, 560 U.S. 413, 428 (2010) ("These limitations [of the comity doctrine] on the remedial competence of lower federal courts counsel that they refrain from taking up cases of this genre, *so long as* state courts are equipped fairly to adjudicate them." (emphasis added)).

For the reasons stated above, Puerto Rico's remedies are inadequate.  Therefore, the doctrine of comity does not remove the case from this Court's jurisdiction.

## CONCLUSION

This is an extraordinary case that belongs in federal court.  Puerto Rico does not offer an adequate remedy for Wal-Mart PR to challenge its exorbitant and unconstitutional new corporate

AMT.  The Court should deny the Secretary's motion to dismiss and permit this case to proceed to the merits.

DATED:  December 29, 2015                          Respectfully submitted,


                                                   By:  /s/ Neal Manne
                                                   Neal Manne (TX Bar No. 12937980)*
                                                   Joseph S. Grinstein (TX Bar No. 24002188)*
                                                   Vikram Swaruup (CA Bar No. 290869)*
                                                   SUSMAN GODFREY LLP
                                                   1000 Louisiana Street, Suite 5100
                                                   Houston, Texas 77002
                                                   Telephone:  (713) 651-9366
                                                   Facsimile:  (713) 654-6666
                                                   nmanne@susmangodfrey.com
                                                   jgrinstein@susmangodfrey.com
                                                   vswaruup@susmangodfrey.com


                                                   Shawn Rabin (NY Bar No. 4814224)*
                                                   Steven M. Shepard (NY Bar No. 5291232)*
                                                   SUSMAN GODFREY LLP
                                                   560 Lexington Avenue, Fifteenth Floor
                                                   New York, New York 10022‑6828
                                                   Telephone: (212) 336‑8330
                                                   Facsimile: (212) 336‑8340
                                                   srabin@susmangodfrey.com
                                                   sshepard@susmangodfrey.com


                                                   Juan A. Marqués-Díaz (USDC-PR No. 211803)
                                                   Francisco G. Bruno (USDC-PR No. 117011)
                                                   Alejandro J. Cepeda (USDC-PR No. 222110)
                                                   McCONNELL VALDÉS LLC
                                                   P.O. Box 364225
                                                   San Juan, Puerto Rico 00936-4225
                                                   Telephone: (787) 250-2619/5608
                                                   Fax: (787) 759-2772/620-8325
                                                   jam@mcvpr.com
                                                   fgb@mcvpr.com
                                                   ajc@mcvpr.com


                                                   * Admitted *pro hac vice*

## Certificate of Service

I hereby certify that on this date I filed a copy of the foregoing document with the Clerk of the Court using the CM/ECF System, which will send notice automatically to all counsel of record.


Date: December 29, 2015                                    s/Alejandro J. Cepeda-Diaz
                                                                              Attorney