UNITED STATES DISTRICT COURT
DISTRICT OF PUERTO RICO

WAL-MART PUERTO RICO, INC.

    Plaintiff,

v.

JUAN C. ZARAGOZA-GOMEZ, in his official capacity as Secretary of the Treasury of the Commonwealth of Puerto Rico

    Defendant.

Civil No. 3:15-CV-03018 (JAF)

**MEMORANDUM AND ORDER**

"[I]t is trite but often true that justice delayed is justice denied." *In re Atl. Pipe Corp.*, 304 F.3d 135, 147 (1st Cir. 2002). As Chief Justice Roberts observed in his 2015 Year-End Report on the Federal Judiciary, Rule 1 of the Federal Rules of Civil Procedure now directs not only the court, but "'*the parties* to secure the just, speedy, and inexpensive determination of every action and proceeding,' . . . highlight[ing] the point that lawyers – though representing adverse parties – have an affirmative duty to work together, and with the court, to achieve prompt and efficient resolutions of disputes." *Id.* at 6 (2015) (emphasis in original) (quoting Fed. R. Civ. P. 1). The court takes this mandate especially seriously here, out of an appreciation of the stakes for both parties.

From the start of this action, the court has engaged in rigorous and effective case management. The court has sought to provide the parties with the "speedy hearing" that the Federal Rules contemplate. *See* Fed. R. Civ. P. 57. In fact, the parties have regularly impressed on the court the need for, plus their support of, expedition. (See, e.g., ECF Nos. 1 ¶¶ 6-7, 66; 24 ¶ 2.42; 25 ¶ 1.4; 37 at 13, lines 8-19; 40 at 2; 48 at 13.) The court

understands that expedition requires hard work, but it requires hard work of us all.  As the court purposefully advised the parties at the conference on December 23, 2015, "If you have any question, if there is any dispute, the doors of my chamber are open 24/7 to deal with this [case]. . . . Day or night.  No matter what." (ECF No. 37 at 53, lines 3-5, 8.)

The trial scheduled to begin on February 2, 2016, will combine the jurisdictional inquiry and the merits of the action because the court has found that the two issues are closely related, even intertwined.  Whether the challenged tax is "exorbitant" and thus presents an exception to the Butler Act, for example, involves many of the same facts and considerations as whether the tax is "punitive" and thus constitutes a bill of attainder.  Of course, the court may lack subject-matter jurisdiction of the action under the Butler Act, 48 U.S.C. § 872.  If Wal-Mart PR fails to prove that an exception under the Act obtains in this case, the court will promptly enter judgment for the Commonwealth and dismiss the complaint.  But, the parties have nothing to gain from bifurcating the court's consideration of the issues, thereby creating the possibility of an unnecessary and wasteful duplication of testimony, evidence, and argument.

Yesterday afternoon, the Commonwealth moved the court to stay discovery and to decide the issue of subject-matter jurisdiction on the briefs alone and without the benefit of fact-finding.  (ECF No. 53.)

The Commonwealth argues that a stay is warranted because "more time" is needed "for an ordered and rational discovery process." (ECF No. 53 at 2.)  The Commonwealth also asserts that "the four corners of the complaint *in tandem* with the parties' respective briefs amply suffice to evaluate the jurisdictional challenge." (ECF No. 53 at 2.)  Thus,

the Commonwealth is arguing for a stay because it allegedly needs more time to conduct discovery on Wal-Mart PR to justify the legality of the Tangible Property Component of its corporate Alternative Minimum Tax. That argument is unavailing.

Wal-Mart PR challenges the tax on its face as violative of the dormant Commerce Clause, the Equal Protection Clause, and the Bill of Attainder Clauses of the United States Constitution, and also the Federal Relations Act. (ECF No. 1 at 31-35.) In other words, Wal-Mart PR's claims and the relief that would follow – a declaratory judgment that the tax is unconstitutional and contrary to federal law, and an injunction against enforcement of the tax (see ECF No. 1 at 35) – reach beyond the particular circumstances of Wal-Mart PR and target the tax as a whole. The complaint could not be clearer on this point. The problem for the Commonwealth is that relevant defenses to such claims do not require or call for protracted factual discovery about Wal-Mart PR and its affiliates.

In the complaint, Wal-Mart PR alleges that the corporate Alternative Minimum Tax violates the dormant Commerce Clause because the tax, "by its very nature, discriminates against interstate commerce" and was enacted for that purpose. (ECF No. 1 ¶ 70.) The tax allegedly violates the Federal Relations Act for the same reason. (ECF No. 1 ¶ 74.) The tax allegedly violates the Equal Protection Clause because it "expressly benefits entities that are engaged in a trade or business exclusively located in Puerto Rico," while "discriminat[ing] against interstate corporations that are based outside of Puerto Rico," treating "[s]imilar purchases" unequally in a prohibited manner. (ECF No. 1 ¶ 79.) And, the tax allegedly violates the Bill of Attainder Clauses because it "specified Wal-Mart as the sole taxpayer in the highest . . . bracket," it "punishe[s] Wal-

Mart PR for the presumed offense of 'tax evasion,' as alleged . . . [in] letters to and testimony before the Legislature," and it "eliminated the one procedure that previously existed for a taxpayer to seek a waiver from the Tangible Property Component." (ECF No. 1 ¶ 83.)

The Commonwealth claims that it needs protracted discovery from Wal-Mart PR to defend against these charges, but the Commonwealth does not explain how internal financial data about Wal-Mart PR could alter the tax's effects on interstate commerce, justify those effects as applied to every corporate taxpayer in Puerto Rico engaged in controlled transfers, or render the tax any less targeted or punitive against Wal-Mart PR. So far, the Commonwealth has largely been unsuccessful in identifying a relevant area of discovery pertaining to the merits of the complaint. In a recent discovery plan, for example, the Commonwealth's requests focused on information directed at whether Wal-Mart PR has used transfer pricing to lower its Puerto Rico tax burden. (See ECF No. 48 at 13-16.) Such an inquiry may be appropriate in a Commonwealth tax audit, but not in a federal-court challenge to the tax as illegal on its face (and, thus, as applied to every local corporation engaged in controlled transfers).

The court recognizes that the wrongful use of transfer pricing to evade local taxes is a legitimate governmental concern to which the Commonwealth may seek a legislative solution. The question here is whether the current solution, as enacted in the Tangible Property Component of the Commonwealth's corporate Alternative Minimum Tax, is valid under federal law. The Commonwealth has not shown how prolonged discovery about the financial innards of Wal-Mart PR, one taxpayer amongst many, is "relevant" or

"proportional" to this query. *See* Fed. R. Civ. P. 26(b)(1). Instead, the Commonwealth ought to focus on proving that the challenged tax does not discriminate against interstate commerce (or, if it does, that the discrimination is justified), that the tax does not treat similarly-situated parties differently (or, if it does, that the unequal treatment is justified), that the tax does not constitute a bill of attainder, and so forth.

Next, the Commonwealth asserts that the issue of whether the court has subject-matter jurisdiction under the Butler Act "is a question of law which requires no inquiry beyond the four corners of the Complaint itself." (ECF No. 53 ¶ 1.18.) But, to make that assertion, the Commonwealth had to ignore controlling Supreme Court precedent. (See ECF No. 53 ¶ 1.10.) In *Stewart Dry Goods Co.* v. *Lewis*, 287 U.S. 9 (1932), the Supreme Court held that a federal-court challenge to a state tax could not be dismissed on the ground that the state court provides an adequate remedy at law when a tax-refund action is available, because the complaint alleged that the state treasury lacked sufficient funds to honor existing refunds. *Id*. at 10-11. Accordingly, the Supreme Court remanded the case to the trial court for a "determination upon evidence" as to whether the state tax-refund action "afforded a certain, reasonably prompt and efficacious remedy" and also, in the event that jurisdiction existed, "for final hearing upon the merits." *Id*. at 11.

Similarly, here, Wal-Mart PR has alleged that the Commonwealth's precarious financial situation has caused "concrete and substantial uncertainties regarding Wal-Mart PR's ability to ultimately collect the enormous refunds to which it would be entitled, if Wal-Mart PR were forced to seek refunds [of its] taxes through the Commonwealth's . . . administrative and judicial refund processes." (ECF No. 1 ¶ 65.) The court cannot

determine whether those alleged uncertainties exist without presiding over an evidentiary hearing where Wal-Mart PR will be required to submit proof. *See Colonial Pipeline Co. v. Collins*, 921 F.2d 1237 (11th Cir. 1991) (remanding a constitutional challenge to a state tax to the District Court to "develop a fuller record" on plaintiff's allegations that ongoing problems with the state's tax-refund action preclude it from providing a "plain, speedy, and efficient remedy.").

The Commonwealth maintains that Wal-Mart PR has "no factual basis" for stating that Puerto Rico courts do not provide an adequate remedy.[1] (ECF No. 53 at 14.) On February 2, 2016, the court will preside over a trial to see whether that assertion is true. (See ECF No. 42.) At that trial, the court will also hear evidence and arguments on the merits of Wal-Mart PR's challenges to the Commonwealth's Alternative Minimum Tax for corporations. The Commonwealth is well aware that this is a matter that needs to be "adjudicated . . . expeditiously." (ECF No. 37 at 13, line 19 (statement of Mr. González Castañer)). If the court has jurisdiction and the tax is valid, then the Commonwealth should be able to collect the tax and plan its budget accordingly, with all the assurance of a federal-court judgment in its favor. But, if the tax proves to be invalid, then the Puerto

---

[1] The Commonwealth asserts that, even if the Commonwealth is unable to pay a tax refund, the local refund process could still provide an adequate remedy for Wal-Mart PR's claims by granting Wal-Mart PR a tax credit instead. Needless to say, such a "remedy" would hardly be speedy or efficient. (See ECF No. 40 at 16-18.) For example, as the Commonwealth acknowledges, a tax credit could work as a remedy only if Wal-Mart PR "continue[s] to be a Puerto Rico taxpayer for years to come." (ECF No. 53 at 4.) Moreover, it is suspect whether a tax credit is a constitutionally-acceptable remedy for an illegal tax. See *McKesson Corp.* v. *Div. of Alcoholic Beverages & Tobacco*, 496 U.S. 18, 40-41 (1990).

By citing 13 L.P.R.A. § 261, see ECF No. 53 at 9-11, the Commonwealth opens a Pandora's Box. That statute's tax-credit system seems to be of no application to income-tax refunds. Although it is true that the statutory exception makes reference to the Income Tax Act of 1954, as we know, that Act has long been repealed and substituted by different versions that regulate income taxation. It thus appears, but we do not now decide, that 13 L.P.R.A. § 261 excludes from its tax-credit system refunds emanating from income taxation in general.

Rico taxpayers subject to it should not have to remit those funds to the Commonwealth, especially if the Commonwealth is unable to repay them.

As was noted at the outset, we all share a fundamental duty "to secure the just, speedy, and inexpensive determination of [this] action . . . ." *See* Fed. R. Civ. P. 1. The court will not delay the proceedings in this pressing matter for no reason. Accordingly, the Commonwealth's motion is **DENIED**. (ECF No. 53.)

**IT IS SO ORDERED.**

San Juan, Puerto Rico, this 8th day of January, 2016.

S/José Antonio Fusté<br>
JOSE ANTONIO FUSTE<br>
U. S. DISTRICT JUDGE