UNITED STATES DISTRICT COURT
DISTRICT OF PUERTO RICO

WAL-MART PUERTO RICO, INC.

    Plaintiff,

v.

JUAN C. ZARAGOZA-GOMEZ, in his official capacity as Secretary of the Treasury of the Commonwealth of Puerto Rico,

    Defendant.

Civil No. 3:15-CV-03018 (JAF)

## **OPINION AND ORDER**

On the morning of January 20, 2016, plaintiff Wal-Mart Puerto Rico, Inc. ("Wal-Mart PR") moved the court to compel third-party Melba Acosta-Febo ("Acosta"), current President of the Government Development Bank for Puerto Rico ("the GDB"), to comply with the subpoena dated January 11, 2016, by producing all reasonably available material responsive to Topic Ten of the subpoena. (ECF No. 81.) The court ordered Acosta to respond to the motion by 4:00 p.m. that afternoon, more than six and one-half hours after the motion was filed. (ECF No. 85.) The court also ordered her to file, under seal, the contested discovery for *in camera* review. (ECF No. 88.) Acosta has responded in opposition to the motion and delivered the discovery for court review. (ECF Nos. 90, 92, 93.) The court appreciates the alacrity of the parties, which has allowed us to promptly read the filings, review the discovery *in camera*, and dispose of the motion.

In Topic Ten of the subpoena, Wal-Mart PR requests from the GDB "[t]he results of the most recent examination of the GDB's financial condition by the Commissioner of Financial Institutions of Puerto Rico (the 'Commissioner')," including "the most recent

report or examination results that the GDB has received from the Commissioner" and the "GDB's communications to and from the Commissioner, since September 1, 2015, relating to the Commissioner's examination of the GDB." (ECF No. 81-1 at 7.) By a letter dated January 14, 2016, Acosta objected to the subpoena. (ECF No. 81-2.) She specifically declined to produce material in response to Topic Ten on multiple grounds, including that the topic "seeks information that is protected from disclosure by the executive privilege, the deliberative process privilege, or other applicable rules, doctrines, privileges or immunities or protections from discovery (whether based upon statute or common law)." (ECF No. 81-2 at 14.) In her opposition to the present motion, Acosta clarifies the basis of her objection, arguing that "[t]he limited documents being withheld are protected from disclosure by the bank examiner's privilege, by [the] deliberate process privilege, and by privileges under Puerto Rican law." (ECF No. 92 at 4.)

Under Federal Rule of Civil Procedure 26(b)(1), "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case."[1] And, under Federal Rule of Evidence 501, federal common law, as interpreted in the light of reason and experience, governs all claims of privilege in a federal-question case unless federal constitutional or statutory law, or a rule prescribed by the United States Supreme Court, provides otherwise. Fed. R. Evid. 501; *see also Fashion House, Inc.* v. *K Mart Corp.*, 892 F.2d 1076, 1095 n.11 (1st Cir. 1989). In general, the burden is on the party asserting a privilege "to 'establish

---

[1] The court finds that the challenged subpoena request complies with the court-ordered discovery plan and the relevance and proportionality requirements of Federal Rule of Civil Procedure 26(b)(1).

the existence and applicability of the privilege . . . [using] sufficient information to allow the court to rule intelligently on the privilege claim." *In re Grand Jury Proceedings*, 802 F.3d 57, 65 (1st Cir. 2015) (alterations in original) (quoting *Marx* v. *Kelly, Hart & Hallman, P.C.*, 929 F.2d 8, 12 (1st Cir. 1991)).[2]  "If the privilege is established, the burden shifts to the opposing party to show that an exception defeats the privilege." *United States* v. *Breton*, 740 F.3d 1, 9 (1st Cir. 2014) (citing *Victor Corp.* v. *Vigilant Ins. Co.*, 674 F.3d 1, 17 (1st Cir. 2012)).  The court granted the request of both Wal-Mart PR and Acosta to conduct *in camera* review of the contested discovery to determine whether the asserted privileges and their exceptions apply.  (*See* ECF Nos. 81 at 9; 84 at 4; 88.)

The federal "courts have long recognized that the report of a bank examiner is protected by a qualified privilege." *In re Subpoena Served upon the Comptroller of the Currency*, 967 F.2d 630, 633 (D.C. Cir. 1992) ("*In re Subpoena*") (citing *Bank of Am. Nat'l Tr. & Sav. Ass'n* v. *Douglas*, 105 F.3d 100, 104-06 (D.C. Cir. 1939)).  However, the First Circuit Court of Appeals appears to have not yet interpreted the privilege, and so we must rely on the decisional law of other circuits instead.  "First and foremost, the bank

---

[2] In her opposition to the motion to compel discovery, Acosta repeatedly asserts that because we denied her leave to file a redacted opposition, she has "limited" her opposition "to general statements and descriptions of the withheld documents that are not intended to waive the privilege."  (ECF Nos. 92 at 2 n.1; 92-1 at 2 n.1.)  Our decision clearly did not necessitate her own.  After all, Acosta could (and should) have provided the court and Wal-Mart PR with a Vaughn index that listed the parts of the "documents that [she] wants to shield from disclosure . . . accompanied by a statement of justification for [each] non-disclosure."  *See New Hampshire Right to Life* v. *United States Dep't of HHS*, 778 F.3d 43, 48 n.3 (1st Cir. 2015) (quoting Black's Law Dictionary 1693 (9th ed. 2009)); see also *Church of Scientology Int'l* v. *United States DOJ*, 30 F.3d 224, 228 (1st Cir. 1994); *Ball* v. *Bd. of Governors of the Fed. Reserve Sys.*, 87 F. Supp. 3d 33, 48 (D.D.C. 2015) (affirming the Federal Reserve's nondisclosure of documents under the deliberate-process privilege based on a review of their Vaughn index and filed declarations).  Vaughn indices are a well-known method of allowing a party to sufficiently assert a privilege without waiving it by means of disclosure.  *See Vaughn* v. *Rosen*, 484 F.2d 820, 826-28 (D.C. Cir. 1973).  The discovery at issue here adds up to a stack of only one-quarter of an inch of letter-size paper, and an index could have easily been compiled.

examination privilege is a qualified rather than absolute privilege which accords agency opinions and recommendations and banks' responses thereto protection from disclosure." *In re Bankers Trust Co.*, 61 F.3d 465, 471 (6th Cir. 1995) (*citing Schreiber* v. *Soc'y for Sav. Bankcorp, Inc.*, 11 F.3d 217, 220 (D.C. Cir. 1993)). "Purely factual material falls outside the privilege, and if relevant, must be produced." *Id.* (*citing In re Subpoena*, 967 F.2d at 634). "[A] district court owes no deference to the [examining agency] in ruling on whether the documents are covered by the bank-examination privilege." *Houston Bus. Journal* v. *Office of the Comptroller of the Currency*, 86 F.3d 1208, 1212 (D.C. Cir. 1996) (*citing Schreiber*, 11 F.3d at 220-21).

Even when the privilege is found to apply, it "may be overridden . . . if good cause is shown." *In re Bankers Trust Co.*, 61 F.3d at 471. To determine good cause, "the court must balance the 'competing interests' of the party seeking the documents (which may vary from case to case) and those of the [examiner] (which will tend to be a constant, reflecting long-term institutional concerns)." *Schreiber*, 11 F.3d at 220 (*quoting In re Subpoena*, 967 F.3d at 634). "At a minimum the court "must consider: '(i) the relevance of the evidence sought to be protected; (ii) the availability of other evidence; (iii) the seriousness of the litigation and the issues involved; (iv) the role of the government in the litigation; and (v) the possibility of future timidity by government employees who will be forced to recognize that their secrets are violable." *Id*. at 220-21 (internal quotes omitted) (*quoting In re Subpoena*, 967 F.3d at 634). A paradigmatic example of good cause is "when the public's interest in effective government would be furthered by disclosure." *In*

*re Subpoena*, 967 F.2d at 634 (quoting *In re Franklin Nat'l Bank Sec. Litig.*, 478 F. Supp. 577, 582 (E.D.N.Y. 1979)).

Based on our *in camera* review of the contested discovery, the court finds that the documents largely consist of factual analysis, *i.e.,* a mix of privileged and unprivileged material. Thus, the court will proceed to evaluate the documents under the multi-factor balancing test set forth above. Acosta alleges that her interest in nondisclosure stems from the need to "ensur[e] full and honest exchanges of information between and among government regulators" and to prevent "future timidity and chilling effects on . . . open and honest dialogue between the GDB and its examiners and regulator." (ECF No. 92 at 2-3.) In turn, Wal-Mart PR alleges that their interest in disclosure stems from the need to prove "the key issue of whether this Court has jurisdiction over this case under the Butler Act" because "[t]he GDB is the lender of last resort for the Commonwealth's agencies, including the Treasury Department," and thus the GDB's solvency "go[es] to the heart of the Commonwealth's fiscal circumstances" and whether the Commonwealth's tax-refund action provides an adequate remedy. (ECF No. 81 at 6.) These competing interests clearly warrant serious consideration.

On the topic of relevance, Wal-Mart PR argues that the challenged discovery is "critical to understand[ing] what, if any, ultimate protection there would be for [their] recovery of overpayment of taxes." (ECF No. 81 at 6.) It is uncontested that "[t]he GDB is the lender of last resort for . . . the Treasury Department." (ECF No. 81 at 6.) And, the discovery focuses on the Commissioner's examination into "the conditions and resources of the [GDB]." 7 L.P.R.A. § 151(g)(1); see also ECF No. 92 at 1. The Commonwealth

has already declared that it "is facing the most serious fiscal crisis in its history" and that its agencies "risk becoming insolvent." *Franklin Cal. Tax-Free Trust* v. *Puerto Rico*, 805 F.3d 322, 324 (1st Cir. 2015). For us to deny to Wal-Mart PR access to this court, the Butler Act, 48 U.S.C. § 872, "requires" the Commonwealth "to provide [them] with a swift and certain remedy when they resist tax collections" on federal-law grounds. *Hibbs* v. *Winn*, 542 U.S. 88, 108 n.10 (2004). Any "uncertainty concerning a State's remedy may make it less than 'plain'" under the Butler Act, thereby "lift[ing] the bar to federal-court jurisdiction." *Rosewell* v. *La Salle Nat'l Bank*, 450 U.S. 503, 516-17 (1981) (*quoting Tully* v. *Griffin, Inc.*, 429 U.S. 68, 76 (1976); then citing *Twp. of Hillsborough* v. *Cromwell*, 326 U.S. 620, 625-26 (1946)). A "supposed remedy at law" is not "'certain' or 'complete'" if the insolvency of the party against whom judgment is sought effectively renders that party judgment-proof. *PHL Variable Ins. Co.* v. *The P. Bowie 2008 Irrevocable Tr.*, 718 F.3d 1, 11 (1st Cir. 2013). That is why the Supreme Court has long held that a state tax-refund action does not constitute a plain, adequate, or complete remedy when the taxing authority is unable "to respond to the judgment." *Matthews* v. *Rodgers*, 284 U.S. 521, 528 (1932) (*citing Arkansas Bldg. & Loan Ass'n* v. *Madden*, 175 U.S. 269, 274 (1899)).

In response, Acosta simply argues that the challenged discovery is "not relevant" because the Treasury Department, not the Commissioner, makes the final determination about whether the GDB is insolvent. (ECF No. 92 at 8.) That argument is unavailing. The Commissioner has examined the recent "conditions and resources of the [GDB]," which clearly is pertinent to this action. 7 L.P.R.A. § 151(g)(1). Accordingly, the court

finds that the contested discovery is not only relevant, but central, to Wal-Mart PR's jurisdictional burden under the Butler Act.

On the topic of other evidence, Wal-Mart PR argues that the Commissioner's examination into "the GDB's circumstances is *sui generis* because the Commissioner's determinations regarding the GDB has profound impacts on whether the GDB can – even if the Treasury is insolvent – serve as a backstop and ensure that Wal-Mart PR can recover sums it pays while it challenges the unconstitutional tax to which it is currently subject." (ECF No. 81 at 7.) As Acosta acknowledges, the Commissioner's examination not only "serves to inform [the Treasury's] regulatory supervision over [the] GDB," but it also provides the basis for the Treasury's subsequent "act[s]" vis-à-vis the GDB. (ECF No. 92 at 2, 4.) Moreover, during our *in camera* review of the contested discovery that Acosta delivered to us, we noted, scattered throughout, hand-written marginal comments suggesting that someone at the GDB firmly disagreed with certain factual determinations about the GDB that the Commissioner's report had made. This apparent dispute indicates that the discovery contains relevant "facts and information" unavailable in "the thousands of pages of documents already produced by [the] GDB." (See ECF No. 92 at 8.) Thus, the court finds that the contested discovery is neither fungible, nor duplicative.

On the topic of the seriousness of the litigation, the parties appear to concur that "the litigation raises serious issues of importance to the people of the Commonwealth." (ECF No. 92 at 9.) "The questions presented here are important constitutional questions that have critical effects on the public and implicate a significant sum of money to both Wal-Mart PR and the Commonwealth." (ECF No. 81 at 7.) The court thoroughly agrees.

On the topic of the role of the Commonwealth in the litigation, Acosta recognizes "the core involvement of government officials" here. (ECF No. 92 at 9.) As Wal-Mart PR puts it, they are seeking "information about what one Commonwealth entity is saying about a second Commonwealth entity to prove [their] case against a third Commonwealth entity." (ECF No. 81 at 8.) Here, the Commonwealth has repeatedly asserted that the court does not have subject-matter jurisdiction of the action, arguing that the local tax-refund action provides Wal-Mart PR with a plain, speedy, and efficient remedy for their constitutional and statutory injuries. (*See, e.g.,* ECF Nos. 24 at 8-20; 53; 94 at 1 n.1.) Because these representations need to be tested, the court finds that "the public's interest in effective government would be furthered by disclosure" about the Commonwealth's ultimate ability to repay a tax refund of millions of dollars. *See In re Subpoena*, 967 F.2d at 634 (*quoting In re Franklin Nat'l Bank Sec. Litig.*, 478 F. Supp. at 582). After all, "the real public interest under such circumstances is not the agency's interest in its administration but the citizen's interest in due process." *Texaco P.R., Inc.* v. *Dep't of Consumer Affairs*, 60 F.3d 867, 885 (1st Cir. 1995) (*quoting Bank of Dearborn* v. *Saxon*, 244 F. Supp. 394, 401-03 (E.D. Mich. 1965)).

Finally, on the topic of fomenting government timidity, the court recognizes that the production of the challenged discovery may ruffle some feathers, raise some hackles, and rub some the wrong way, thereby warping the incentives of government agencies as they engage in "the ongoing process of [a financial-oversight] examination." (ECF No. 92 at 9.) In making this argument, Acosta touches on the fundamental "paradox . . . in the privilege's rationale," that "[g]overnment documents are protected from discovery

so that the public will benefit from more effective government." *In re Franklin Nat'l Bank Sec. Litig.*, 478 F. Supp. at 582. At the same time, "[g]overnment transparency is critical to maintaining a functional democratic polity, where the people have the information needed to check public corruption, hold government leaders accountable, and elect leaders who will carry out their preferred policies." *Hamdan* v. *United States DOJ*, 797 F.3d 759 769-70 (9th Cir. 2015). As just noted, "when the public's interest in effective government would be furthered by disclosure," as is the case here, "the justification for the privilege is attenuated." *In re Franklin Nat'l Bank Sec. Litig.*, 478 F. Supp. at 582.

Accordingly, the court finds that all five basic factors of the balancing test weigh in favor of a good-cause disclosure of the contested discovery to Wal-Mart PR. *See In re Subpoena*, 967 F.3d at 634. The bank-examiner privilege neither justifies, nor excuses, a refusal to comply with the subpoena. Moreover, Acosta conflates the bank-examination privilege and the deliberative-process privilege to the point that the failure of one entails the failure of the other. (*See, e.g.,* ECF No. 92 at 8 (indicating that both privileges rise or fall together under the multi-factor test in *In re Subpoena*).) But the conflation appears justified because "the bank examination privilege [is] a close cousin of the deliberative process privilege." *In re Subpoena Duces Tecum Served on the Office of the Comptroller of the Currency*, 145 F.3d 1422, 1423 (D.C. Cir. 1998). Moreover, insofar as the two privileges differ, First Circuit case law indicates that the bank-examination privilege is the more relevant of the two to Acosta's claim that the Commissioner's examination into the financial health of the GDB and related material should not be disclosed. *See Texaco*

*P.R.*, 60 F.3d at 884 (limiting the deliberative-process privilege to "confidential inter-agency memoranda on matters of law or policy.")

Next, Acosta maintains that the court should recognize, under *In re Hampers*, 651 F.2d 19 (1st Cir. 1981), the Puerto Rico law "counterpart[s]" to the federal-law privileges that we just discussed. (ECF No. 92 at 11.) Unfortunately, Acosta spends all her time arguing for the applicability of *In re Hampers* and no time explaining how these state-law counterparts are broader than the federal privileges. Thus, her claim that the contested discovery should not be disclosed under 7 L.P.R.A. § 151(h) and Rule 514 of the Puerto Rico Rules of Evidence of 2009, when they should be under federal law, is waived. "It is a settled rule that 'issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived.'" *Morgan* v. *Holder*, 634 F.3d 53, 60 (1st Cir. 2011) (quoting *Nikijuluw* v. *Gonzales*, 427 F.3d 115, 120 n.3 (1st Cir. 2005)). In any event, for the reasons stated above, the court finds that, even under *In re Hampers*, the court should not recognize these Commonwealth privileges under Federal Rule of Evidence 501 because "the benefit gained for the correct disposal of litigation" from the production of the contested discovery "is greater than . . . the injury that would inure to the relation by the disclosure." *See In re Hampers*, 651 F.2d at 23.

Finally, the court rejects Acosta's claim that producing the contested discovery would be "unnecessarily burdensome to . . . [the] GDB." (ECF No. 92 at 10.) After all, the GDB was able to deliver a paper copy of the discovery to the court approximately two and one-half hours after we had ordered its production for *in camera* review. (*See* ECF Nos. 88, 90.) The GDB can presumably do the same for Wal-Mart PR.

In sum, the court hereby **GRANTS** Wal-Mart PR's motion to compel discovery. (ECF No. 81.) In doing so, the court finds that the now-compelled discovery warrants designation as "classified information" under the terms of the protective order. (ECF No. 49.) The court also finds that the discovery does not warrant redaction because all of the asserted privileges have been overcome for good cause, but also because Acosta's claims of privilege were all general and unaccompanied by, for example, a Vaughn index setting forth more specific claims. Acosta, the GDB, and defendant are ordered to produce the discovery to Wal-Mart PR by 3:00 p.m. today.

**IT IS SO ORDERED.**

San Juan, Puerto Rico, this 21st day of January, 2016.

S/José Antonio Fusté
JOSE ANTONIO FUSTE
U. S. DISTRICT JUDGE
